John DeGoey, Appellant, v. Wm. Van Wyk and Jan Uithoven.

**Evidence.** A surety counter-claimed for wrongful attachment, and also alleged that the debt for which he was surety had been released in consideration of a mortgage given by the principal debtor. Evidence was admitted that the surety had stated he was liable for a security debt and intended to make a conveyance in order to avoid it. There was no evidence that he knew of the execution of said mortgage when he made said statement. *Held*, it was proper to charge that such evidence bore only on whether the attachment was wrongfully issued and could not be considered on whether or not the alleged agreement to release had been made.

**Parol: Variance:** RECITED CONSIDERATION. The rule excluding parol evidence to vary the consideration, as fully stated in a written instrument, does not apply to third persons not parties to

the written agreement, whose rights may be affected by the character of the consideration.

**Instruction Construed.** A surety claimed a release because his principal had given a mortgage to secure both the surety and other debts. The court charged that "plaintiff could not release any of the mortgaged property or appropriate it to any purpose other than the payment of the mortgage debt," without releasing the surety to the extent of the value of property otherwise appropriated. *Held*, this does not charge that the mortgaged property must be first appropriated to pay the surety debt.

**Wrongful Attachment:** MEASURE OF DAMAGES. Evidence that an attachment debtor was prevented by the levying of the attachment from carrying out an arrangement for the purchase of property, and that he was prevented from sowing a crop thereon, is inadmissible on the question of the amount of damages for wrongfully suing out the attachment, as the damages which it seeks to establish are too remote and speculative.

**Practice:** VERDICT CONSTRUED. Plaintiff brought action on notes, aided by attachment. Certain defenses, as well as a counter-claim for wrongful suing out of the attachment, were interposed. There was a special finding that the attachment was wrongful and a general verdict for one dollar for defendant. *Held*, this is a general verdict against plaintiff on all the issues, defenses, and counter-claim, and the court was not authorized to enter judgment for plaintiff on the notes, after subtracting the dollar allowed defendant by the verdict, attorney's fee due on account of the wrongful attachment, and part of the costs.

HARMLESS ERROR. The admission of incompetent evidence as to the damages resulting from a wrongful attachment and an erroneous charge as to exemplary damages, are harmless when it appears by the special and general verdict that nominal damages, only, were allowed.

*Appeal from Marion District Court.*—HON. A. W. WILKINSON, Judge.

THURSDAY, APRIL 9, 1896.

ACTION on three promissory notes. Trial to a jury. Verdict and judgment for defendant. Plaintiff appeals. —*Affirmed.*

*P. H. Bousquet, Hays Bros.*, and *H. S. Winslow* for appellant.

*Earl & Prouty* and *G. W. Crozier* for appellee Uithoven.

Kinne, J.—I. Plaintiff commenced his action, aided by attachment, upon three promissory notes, which were signed by both of the defendants, and which, in the aggregate, amounted to about one thousand two hundred dollars. The grounds alleged for an attachment against the property of the defendant, Uithoven, are that he "is about to remove permanently out of the state, and refuses to secure or pay the plaintiff," and "he is about to remove his property, or part thereof, out of the county, with intent to defraud his creditors." Defendant Van Wyk made no appearance, and judgment was rendered against him by default. Uithoven answered in three counts. In the first count he admits the execution of the notes, but says he is surety only for Van Wyk, of which fact plaintiff had knowledge; that they were given for property purchased by his co-defendant of plaintiff; that, after the notes had been given, the plaintiff, desiring to obtain a mortgage upon the property of Van Wyk to secure, not only the notes sued upon, for which he, Uithoven, was surety, but also other claims, agreed with Van Wyk, if he (Van Wyk) would execute such a mortgage, he (plaintiff) would release the defendant from all liability as a maker of said notes; and the said mortgage was so executed. The second count admits the execution of the notes, and alleges that plaintiff is estopped from collecting them of defendant, because he (Van Wyk) entered into an arrangement under which Van Wyk purchased at a sale made by plaintiff a large amount of property, plaintiff agreeing that if defendant would

become Van Wyk's surety upon the notes to be given therefor, he (plaintiff) would bear one-half of the liability with the surety, and would carry them equally with the defendant, until Van Wyk could make the money out of the rented farm and stock purchased, with which to pay the debt; that afterwards, Van Wyk, fearing he could not pay the notes, proposed to transfer to plaintiff the property which he had mortgaged to secure them, and which mortgage had been taken contrary to the defendant's wishes; that plaintiff accepted and received the mortgaged property, and converted some of it to his own use; that he released a portion of it from the lien of the mortgage, whereby the defendant was damaged in a sum greater than the amount due on the notes, and is released from all liability. The third count seeks to recover for damages on the bond for the wrongful issuance and levy of the attachments, it being charged that the same were wrongfully and maliciously sworn out and levied, by reason of which he claims actual and exemplary damages. It is also averred that defendant was contemplating removing from Iowa to the state of Mississippi; that he had contracted to sell his Iowa farm, and by reason of the levy of said writs he was unable to comply with his agreement to convey, and was greatly damaged thereby. The mortgage referred to in the answer recites that whereas Van Wyk is indebted upon certain promissory notes, signed by himself and Uithoven, which are the notes in suit, two of which are held by certain banks, and upon which plaintiff is liable as an indorser, and Van Wyk is also indebted to plaintiff upon other notes, upon one of which he is about to bring suit, that as to it plaintiff agrees to extend the time of payment; that he has also extended a credit of one hundred and twenty-five dollars to Van Wyk, for which a note was that day executed. "Now, therefore, be it known

that I, William Van Wyk, above named, for, and in
consideration of the extension of said promissory
note, originally payable to E. Bientema, and in con-
sideration of the sum of one hundred twenty-five
dollars to me in hand paid, and the receipt whereof is
hereby acknowledged, have bargained and sold," etc.
Here follows a list of personal property. "The con-
ditions of this mortgage are that I shall pay, or cause
to be paid, to the said John DeGoey, the said prom-
issory notes above described [not those in suit], and
shall pay, or cause to be paid, the hundred twenty-
five dollar note, and that I shall save and keep
harmless the said John DeGoey from any and all
damages and liability by reason of his having
indorsed and assigned the promissory notes herein
first above described, as indorser thereof,"—then the
conveyance should be void. To these answers the
plaintiff replied, denying all averments, save the
admission of the execution of the notes, and the con-
templated removal to Mississippi.

II. It is first contended that the evidence fails
to establish that Uithoven was only a surety on the
notes in suit. We shall not discuss the evidence
touching this matter. We think it was such as to
justify the jury in finding that Uithoven signed the
notes as surety only.

III. It is urged that to permit Uithoven to show
that the agreement between plaintiff and Van Wyk
was, that if the latter would execute the mortgage,
the plaintiff would release Uithoven from liability on
the notes sued upon, was changing the written
contract of the parties by parol evidence.
Appellee contends that such evidence is admis-
sible to show the actual consideration of the mortgage.
In support of his contention appellee relies upon *Scott
v. Sweet*, 2 G. Greene, 224, and *Taylor, Thomas & Co.
v. Wightman*, 51 Iowa, 411 (1 N. W. Rep. 607). The

first case cited, was one where it was attempted to show as a defense to a promissory note, that the consideration had failed, and this court held such evidence admissible. In the last case the consideration stated was one dollar, and it was held that it might be shown what the consideration in fact was. These cases are unlike that at bar. In this case the consideration is expressly stated to be the extension of a certain note, and the payment of another note given for money that day advanced to Van Wyk. There is much conflict in the authorities as to what may be shown regarding the consideration of a written instrument. Many authorities hold that the consideration may be shown by parol to be greater or less, other or different from, or something additional to that stated in the writing. *Railway Co. v. Neafus* (Ky.) (18 S. W. Rep. 1030); *Frayley v. Bentley*, 1 Dak. 25 (46 N. W. Rep. 506); I Pars. Cont. page 430; *Machine Co. v. Gaertner*, 55 Mich. 453 (21 N. W. Rep. 885; 17 Am. & Eng. Enc. Law, pages 438–442. Other authorities seem to go so far as to permit a consideration to be shown which is inconsistent with, or contrary to that stated in the written instrument. Id. page 441. In our own state, and in cases where the facts involved make the holdings applicable to the facts of the case at bar, the rule has been adhered to that when the considerations are expressed and fully stated, in unmistakable language, in the written instrument, it is not competent or admissible to add to, change, or vary them by parol evidence. *Courtwright v. Strickler*, 37 Iowa, 382; *Gelpcke v. Blake*, 19 Iowa, 263; *Blair v. Buttolph*, 72 Iowa, 31 (33 N. W. Rep. 349); *Lewis v. Day*, 53 Iowa, 575 (5 N. W. Rep. 753); *Bank v. Snyder*, 79 Iowa, 191 (44 N. W. Rep. 356); *Benson v. Haywood*, 86 Iowa, 107 (53 N. W. Rep. 85); *Railway Co. v. McCormick*, 90 Iowa, 446 (57 N. W. Rep. 949). See *Kracke v. Homeyer*, 91 Iowa, 51 (58 N.

W. Rep. 1056).  If, then, the defendant, Uithoven, had been a party to the mortgage, this evidence would not have been admissible.  While, under our statute, Uithoven, if a party for whose benefit the mortgage was made, might avail himself of it (Code, section 2552), still he is in no legal sense a party to it so as to bring him within the rule which excludes the parties to such instruments from adding to, or varying them by parol evidence.  The rule excluding such parol evidence applies only to those who are parties to the instrument, the effect of which may be sought to be changed.  It cannot affect third persons, who, were it otherwise, might thereby be precluded from establishing the truth as to matters with regard to which they had nothing to do.  1 Greenl. Ev. section 279; 17 Am. and Eng. Enc. Law, page 443; *Johnson v. Portwood* (Tex. Sup.) (34 S. W. Rep. 596).  Inasmuch as the defendant was not a party to the mortgage, there was no error in permitting him to show that, in fact, there was a consideration other than that stated therein.

IV.  The defendant, having testified, touching arrangements he had made for the purchase of property in the state of Mississippi, and for the disposition of his farm in Iowa, was asked and permitted to answer the following questions:  "Have you been able to carry out that arrangement?"  He answered:  "I could not do that.  The land is attached, and that is what holds me back.  I had planned to go to Mississippi."  He was then asked: "What obligations did you enter into, down there?" He answered:  I bought four hundred forty acres of land down there.  I was to have taken possession on the first of March, and pay for it.  I was prevented, because I did not have the money.  I knew of the second attachment.  We did not go, as we expected to, on account of the attachment.  If it had not been

for this attachment, I would have been in Mississippi, sowing oats. I think I would have gone about eight days ago. I think my time is worth two dollars per day." After testifying that some of his horses had been attached, he was asked: "Now, what was you about to do with these horses, at the time they were attached?" He answered: "We wanted to put them in the car. I was going to send them to Mississippi." All of these questions were objected to as incompetent, irrelevant, and immaterial and speculative, and in each case the objection was overruled. The defendant's real estate and certain horses had been levied upon under the writs of attachment. The questions propounded sought to establish facts which were within the allegations of the defendant's answer. In *Campbell v. Chamberlain*, 10 Iowa, 337, it was held that the damages in such cases might embrace all losses and expenses incurred by the party in making defense to the attachment proceedings, and such losses as he may have sustained by being deprived of his property, and any injury thereto by its loss or depreciation in value; and that injuries to credit, character, or business, were too remote and speculative, to be considered. See *Plumb v. Woodmansee*, 34 Iowa, 116. In *Lowenstein v. Monroe*, 55 Iowa, 82 (7 N. W. Rep. 406), a stock of goods had been levied upon, and it was held that damages claimed for loss of profits, loss of business, and custom, and credit, were not recoverable. It seems to us that such damages as it was sought to establish by these questions were too remote and speculative. It is not at all certain that the purchase in Mississippi would have been completed, and the defendant have removed there, even though no attachment had been levied upon his property. If the Mississippi arrangment had been finally consummated, it cannot be presumed that it would have inured to defendant's

benefit. Whether or not the purchase would have proved a profitable investment is a matter purely speculative. So, also, the claim that defendant, if not prevented by these attachments, would have been sowing oats in the sunny south, is a matter so devoid of certainty as not to be a proper element of damages. We think the court erred in admitting this evidence. It is urged by appellee, however, that the ruling of the court was without prejudice, and in this view we concur. The jury found specially that both writs of attachment were wrongfully sued out, and returned a general verdict for the defendant in the sum of one dollar. Taking the special findings and general verdict together, we think it may properly be said that the jury must have found that the defendant was not liable upon the notes. Such being the case, it is apparent that the jury could not have allowed any damage based upon this improper evidence, as the amount allowed,--- one dollar,---was merely nominal. The instruction of the court relating to damages was correct.

V. It is said that the court erred in instructing the jury as to exemplary damages, because the evidence showed that the grounds stated for the attachment were true. If that be conceded, still it would be error without prejudice, from the fact that the damages assessed clearly indicate that no exemplary damages were allowed. Under the circumstances, it is impossible to conceive how any prejudice could have resulted from the giving of the instruction.

VI. Error is assigned upon the giving of the fourteenth instruction to the jury. The evidence shows that Uithoven went to one Thomassen to have a deed made, fraudulently conveying his property to his sister-in-law. He stated to Thomassen that he was liable for a security debt, which he would not

pay if he could avoid it, and therefore wished to make the conveyance. This was prior to the commencement of these actions. The court told the jury that if such facts were found by them to be true, they should consider them only in determining whether or not plaintiff had sufficient grounds or reasons for the issuance of the attachments, and must not consider them as bearing upon the question as to whether or not the contract was made between the defendant and plaintiff for the release of Uithoven from liability on the notes sued upon. It is insisted that the evidence should have been considered as to both matters. There was no error in the instruction. It does not appear that at the time Uithoven made these statements, he had any knowledge of the arrangement between plaintiff and Van Wyk for his (Uithoven's) release from liability upon the notes. It is certain, therefore, that whatever Uithoven said, could not be considered as indicating that he considered himself liable on the notes to the extent of defeating the contract between plaintiff and Van Wyk, of which he was then ignorant. Again, there is no evidence that Uithoven admitted any liability upon these notes in suit. No particular debt was mentioned by him, and it is only by inference that it can be said he referred to the notes in controversy.

VII. Complaint is made of the ninth instruction given by the court to the jury, in which they were told that, "after the taking of said mortgage [from Van Wyk to plaintiff] the plaintiff could not release any of the property covered by said mortgage, or appropriate it to his own use, or to any other purpose, other than in the payment of the claim secured by said mortgage, without releasing Uithoven from liability on said notes to the extent of the value of said property so released or appropriated,

provided you find that said Uithoven was simply liable as surety on said notes." It is said that the instruction was misleading; that plaintiff had the right to apply the property taken under the mortgage to any part of the debt it secured; that the instruction in effect told the jury that the property taken must be first applied in payment of the Uithoven debt. We do not so read it. As we understand it, the jury were plainly told that if plaintiff took any of this mortgaged property, he must apply it upon the debt which the mortgage secured; not necessarily on the Uithoven debt, but upon the mortgage debt, which embraced two other notes aside from those which had been signed by Uithoven. The effect of the instruction was to tell the jury, that if plaintiff took the property, and disposed of, or appropriated it to his own use, and did not apply it to the discharge of the debts which the mortgage secured, then, in case they found that Uithoven was only surety on the notes, he would be released to the extent of the value of the property thus taken and not applied on the mortgage debt. It occurs to us the instruction is not open to the criticism made by appellant.

VIII. Appellant claims that the verdict of the jury only covered the matters raised by the counter-claim, the demand for damages because of the wrongful suing out of the writs of attachment, and insists that judgment should have been entered for plaintiff against Uithoven for the amount due upon the notes, less the attorney's fees allowed, and the one dollar verdict, and, possibly, a portion of the costs. The whole case upon the notes, as well as upon the counter-claim, was properly submitted to the jury. They returned a general verdict for one dollar, with special findings that the attachments were wrongfully sued out. Surely, this verdict was a general one against the plaintiff, upon all the issues presented in

the entire case. The abstract of appellant recites that the court "rendered judgment against the plaintiff, and in favor of the defendant, in accordance with the verdict of the jury."

IX. Complaint is made of the seventh instruction. In it, the law as to the effect of an appropriation, or release of the mortgaged property is not, perhaps, fully stated, but in the ninth instruction, as we have seen, it is correctly set forth, and we do not think any prejudice could have resulted from the giving of the seventh instruction.

X. Many errors are assigned and argued relating to the admission of the evidence. We cannot consider them in detail. We have examined all of them, and, while we think that the court did err in some of its rulings in that respect, we are satisfied that such error worked no prejudice to appellant.

Finally, it is said that the verdict is against the evidence. There was ample evidence to support it. On the whole record we discover no reversible error. —AFFIRMED.