B. F. ERB v. THE GERMAN-AMERICAN INSURANCE COMPANY OF NEW YORK, Appellant.

Insurance: PUBLIC POLICY: *Construction of policy.* Where a policy of insurance has been written on a stock of drugs and liquors, the use of a part of the property, that is susceptible of legitimate use, for an unlawful purpose, does not render the insurance void, as against public policy.

EVIDENCE: *Proving value.* In an action on a fire policy, the insured testified as to the values of the different items. *Held,* that the value stated was presumably the cash value at the time of the loss, and within the measure of damages in the policy, which provided that the insurer should "not be liable beyond the actual cash value of the property at the time any damage or loss occurred."

SAME. Proof of the use of insured fixtures in connection with the drug store by the owner of the store, who was not a registered pharmacist, does not establish an unlawful use of the fixtures within a provision for forfeiture in the policy, as the business may have been conducted by a registered pharmacist, and in such case, there would be no violation of McClain's (Iowa) Code, section 2523, making it unlawful for one not a registered pharmacist to conduct a drug store.

EXECUTORY CONTRACT OF SALE: *Construction of policy* Where the insured agreed to exchange the property insured for land, the exchange to be effected not later than a given date, and the agreement was never executed, there was no change of interest or possession within the meaning of a provision invalidating the

policy, "if any change takes place in interest, title, or possession of the subject of insurance." Nor was there an increase of hazard.

INSTRUCTIONS: *Applicability.* On the issue, whether liquors named in a policy of insurance were owned by the insured for the purpose of sale, in violation of law, it was not error to charge that, if the insurer did not intend to sell them in the state, or if he kept them with intent to sell them outside of the state, his ownership was not unlawful, though there was no evidence of an intent to sell them outside of the state.

FRAUDULENT PROOF OF LOSS: *Instructions.* Where the loss, as found by the jury, was somewhat less than the proof of loss made by the insured to the insurer, it was proper to charge that if plaintiff, in the proofs of loss, placed the amount too high, through inadvertence or mistake, with no intent to defraud defendant, the statement would not necessarily defeat plaintiff's right to recover; and this though there is no claim of mistake made.

Appeal: INSTRUCTION. An appellant cannot complain of error in an instruction which was in his own interest.

MISCONDUCT OF COUNSEL: *Non-prejudicial error.* An improper statement by counsel in opening a case, which is immediately withdrawn after an exception with an acknowledgment that it was not justified under the existing state of record, will not be regarded, on appeal, as prejudicial error, if it was not so considered by the trial judge, though the acknowledgment does not state that the words withdrawn were untrue.

*Appeal from Carroll District Court.*—HON. C. D. GOLD-SMITH, Judge.

WEDNESDAY, MAY 27, 1897.

ACTION on a policy of fire insurance. Judgment for plaintiff, and the defendant appealed.—*Affirmed.*

*McVey & Cheshire* for appellant.

*Earle & Prouty* and *F. A. Charles* for appellee.

GRANGER, J.—On the twenty-second day of August, 1893, the defendant company issued to the plaintiff its policy of fire insurance, to the amount of one thousand two hundred dollars, on a stock of drugs, patent medicines, etc., at Coon Rapids, Iowa, and on the ninth

day of September, 1893, said stock of goods was destroyed by fire, and this action is to recover on the policy. The following are defenses pleaded, to each of which the court sustained a demurrer: "(8) The defendant says that there was conducted in the building described in the petition, and by means of the property insured in said policy, a pharmacy, at the time said insurance was written, and up to the time of said fire, by the said B. F. Erb, and that said B. F. Erb had no permit to do business as a pharmacist, and that his business was conducted in violation of the laws of the state of Iowa, and that this fact the plaintiff concealed from this defendant, at the time this insurance was written, and at all times thereafter, —the fact that he was conducting a pharmacy contrary to the laws of the state of Iowa, and without a permit to conduct such a pharmacy, and in violation of the statutes of Iowa,—which concealment was a material fact concerning this insurance, and by the terms of the policy renders the same void. (9) Defendant further says that said Erb was engaged, at the place described in the petition, and by means of the appliances and property insured in the policy, in illegally selling intoxicating liquors, at the time said policy was written, and thereafter up to the time of the fire, and that said Erb was not a registered pharmacist, neither had he any permit to sell or deal in intoxicating liquors, and these facts were all concealed from the defendant, and which facts are each and all of them material facts concerning this insurance; and by the express terms of this policy the same is rendered void by such concealment." An amendment to the answer was filed, having reference to some particulars of the defenses in question; but it deals mainly with conclusions of law, and, as to facts, it seems to add nothing to the sufficiency of the defenses pleaded, and hence it need not be set out.

The proposition for consideration, as presented by appellant, is: "Can there be a recovery on an insurance policy covering articles of merchandise which are owned, and kept, and used, in violation of the laws of the state?" It is urged that to permit such a recovery would be against public policy. The line of authorities coming to our nótice, to aid in the solution of the question, is quite limited. Those nearest to sustaining appellant's view are in Massachusetts. In *Kelly v. Insurance Co.*, 97 Mass. 284, the insurance was on a building that, in violation of the conditions of the policy that the building should not be occupied or used for unlawful purposes, was used for gambling, in violation of law, which avoided the policy. The case seems to have no bearing on the facts of this case. *Kelly v. Insurance Co.*, Id. 288, is a case in which the insurance was on a stock of liquors kept by the assured for sale in violation of law. The policy covered the liquors and casks containing them. The opinion holds the policy void, and, speaking of the assured, it closes with the words: "His contract was in contravention of law, and void as to him, because he entered into it in order to protect himself in his illegal acts." The case, as to authority, is grounded on holdings in cases involving marine insurance. In such cases the rule is announced that "the illegality of the voyage in all cases avoids the policy, and the voyage is always illegal when the goods or trade are prohibited, or the mode of its prosecution violates the provisions of the statute." In *Boadman v. Insurance Co.*, 8 Cush. 583, it was sought to avoid policies of insurance on a building and personal property, consisting of leather and materials for the manufacture of shoes. The evening before the fire, persons assembled in a room in the building and conducted a lottery, which was a use of the room for an unlawful purpose. The rule of the case is

VOL. 98 Ia—39

stated as follows: "The drawing of a lottery, with the consent and participation of the assured, in a building insured against loss by fire as a shoe manufactory, does not avoid the policy on the building, nor on the stock therein." In the opinion is the following language: "The distinction between cases where contracts are or are not void, as against law, is well stated by Marshall, C. J., in *Armstrong v. Toler*, 11 Wheat. 271. The principle established is that, where the consideration is illegal, immoral and wrong, or where the direct purpose of the contract is to effect, advance, or encourage acts in violation of law, it is void. But, if the contract sought to be enforced is collateral and independent, though in some measure connected with acts done in violation of law, the contract is not void." This rule is followed in *Johnson v. Insurance Co.*, 127 Mass. 555, in which a policy was held void. In *Insurance Co. v. De Graff*, 12 Mich. 124, the policy included, among other things, groceries, among which were liquors, and the policy was claimed to be void, because to sustain the policy, with liquors included, would be insuring an illegal traffic. The case is quite in line, on principle, with the one at bar. The case briefly treats of the rule as to marine insurance, holding it to be inapplicable, and, as suggesting a state of facts that would be applicable, it is said: "If this policy were, in express terms, a policy insuring the party selling liquor against loss by fine or forfeiture, it would be quite analogous. But this insurance attaches only to property, and the risks insured against are not the consequence of illegal acts, but of accident." In the opinion it is further said: "By insuring his property, the insurance company has no concern with the use he may make of it; and, as it is susceptible of unlawful uses, no one can be held to contract concerning it in an illegal manner unless the contract itself is for a directly illegal purpose. Collateral

contracts, in which no illegal design enters, are not affected by an illegal transaction with which they may be remotely connected." The case cites *Insurance Co. v. Polleys*, 13 Pet. 157, and *Armstrong v. Toler*, 11 Wheat. 258. It is there said: "It is difficult to perceive how public policy can be violated by an insurance of any kind of property recognized by law to exist." In *Carrigan v. Insurance Co.*, 53 Vt. 418, the Massachusetts cases and the Michigan cases are noticed, and the case quotes much of the language we have quoted from them. The policy in that case covered a stock in trade consisting of groceries, provisions, drugs, * * * including wines and liquors. In the case at bar, as in that one, liquors are included in the terms of the policy. In that cas it is said: "If the purpose of the contract in question had been to protect the assured in the sale of intoxicating liquors, it would have been null; but the greater part of the property insured consisted of goods, insurance upon which was subject to no objection. The contract was legal on its face, nothing appearing to show that the wines and liquors were intended for illegal sale; and it is a fact, not needing proof, that in compounding medicines, liquors, especially wines and alcohol, are of daily use, and for that purpose, their possession and use by druggists are legitimate. The assured was a dealer in drugs and medicines, and in that respect legitimately and presumably using liquors. There was evidence tending to show that he illegally sold them, including those not used in compounding medicines; and the fact may have been that the latter trade was the larger and the main one. If such illegal traffic was the business of the assured, and his legal traffic and transactions with other property a mere cover, ostensibly carried on for the purpose of enabling him to secretly disguise his iniquity, the purpose of the contract would be to protect him in illegal ventures, and it would, therefore,

be void; but if he carried on business, using alcoholic liquors legitimately in his drug trade, and occasionally sold them in violation of law, we think that, if no illegal design entered into the making of the contract in its inception, that it would be so far collateral to the illegal acts that it would be inconsistent, and in accordance with no well-adjudged case, to hold it null." The case of *Pollard v. Insurance Co.*, 63 Miss. 244, is determined upon a statute making contracts void, and is of no force as authority in this case. This case, in some respects, differs from any we have noticed or cited; but we think the rule of the Michigan and Vermont cases announces the correct doctrine.

The following is the property insured, as stated in the policy: "$1,200 on his general stock of drugs, patent medicines, lamps and lamp goods, paints, oils, stationery, books, wall paper, liquors, fancy and toilet articles, and druggist's sundries." It shows much property insured, outside of liquors and drugs, for which permits to sell must be obtained. The facts to bring the policy within the rule to make it void are wanting. The drugs and the liquors are recognized property in this state, and as legitimate subjects of insurance as other property. It is the illegal use of them that gives rise to the questions before us. We have not seen a case in which, because of the mere use of property for illegal purposes, not increasing the hazard, in the absence of stipulations to that effect, a policy has been held void because of such use. It is not a case in which the contract itself is against public policy, by the parties, at the inception of it, intending it to be in aid of purposes or designs to violate the law. This case simply presents the question whether, where a party uses property for an unlawful purpose, that is susceptible of legitimate use, such use will render the insurance contract

void, as against public policy. We think that no
authority sustains such a rule, and it does not seem to
be dictated by reason.

II.   A condition of the policy is that it shall be
void "if any change take place in the interest, title,
or possession of the subject of insurance,   *   *  .  *
whether by legal process or judgment, or by volun-
tary act of the assured, or otherwise." On the
twenty-second day of July, 1893, the plaintiff
entered into a written contract with one Funk
to sell to him the stock insured, in exchange for land,
the exchange to be effected not later than August 1,
1893. The agreement was never executed. Defend-
ant pleads the facts setting out the contract, and to
that division of the answer there was a demurrer,
which the court sustained, and complaint is made of
that ruling.   Appellant concedes that, under the hold-
ings of this court, such a sale as is pleaded does not
avoid a policy that contains a provision against the
"sale of the property, or exchange of title"; but it is
said that this policy goes further, and renders it void
"if any change   *   *   *   takes place in the interest
of the subject of insurance," etc., and it is urged that
"to some extent" there was, by the contract, a change
of interest.   The conclusion of appellant's argument
is that plaintiff's only liability for a failure to perform
the contract would have been a judgment for dam-
ages for breach of his contract.   There was no change
of possession, nor right of use.   Speaking of the inter-
ests contemplated by the policy, we fail to imagine
any change therein because of the contract.   It was a
simple agreement to, in the future, make such a
change, which was never done.   It is true that the
policy stipulates against a change of interest, or a
change of title, or a change of possession.   There was
not a change of either.   Plaintiff's interest in. the
safety of the property was as great after the contract

as before, for the purchase price depended on an invoice to be taken before the transfer; so that there was, because of the contract, no increase of hazard. It may be said that the only interest contemplated by the contract was that of ownership. Its terms could give rise to no contingency under which Funk would assert any other interest than that of ownership. These facts bring the case in line with the holdings under which appellant concedes the policy would be valid.

III.    The following appears in the record as occurring during the opening statement to the jury by plaintiff's counsel: "What I undertake to say is this, that they have had a foreign fellow running around here with a bottle of whisky in his pocket, that they called a 'detective'; that the defendants have had— Mr. Cheshire: To this statement the defendant objects and excepts. Mr. Prouty: If I don't prove it, it will reverse your case. What I undertake to say is this, gentlemen,—I will stand by what I said,—that I understand that they have had a fellow running around here, looking up testimony. Mr. Cheshire: And to all of this the defendant excepts. Mr. Prouty: But I undertake to say the testimony they will have, if they do have any here, that we burned this property,—that it is based upon improper motives, and is improper testimony; that there is not a particle of truth in it; that Mr. Erb, at the time the fire occurred, was at the time in bed, sound asleep, at four o'clock in the morning, and I guess a little bit sounder than any other man in town. Mr. Cheshire: And to all of this statement to the jury the defendant excepts and objects. Mr. Prouty: Upon reflection, I am inclined to think that my remarks concerning the manner of obtaining evidence on the part of the defendant, were improper, under the present state of the record, and that I would not be

permitted to prove the things which I attempted to say, on account of the condition of the record just now,—a matter that I did not fully consider when making the statement,—and I therefore, in the presence of the court and the jury, withdraw all statements, at this time, as to the manner of obtaining testimony on the part of the defendant." It is thought that the appellant was prejudiced by the statement, notwithstanding the words withdrawing it. It is true that the withdrawal does not acknowledge that the statement as to what could be proven was false, but it followed so soon after the other statement that the jury must have clearly understood that it would not be relied on as a fact, and there was a practical acknowledgment by counsel that he was wrong, in view of the record, in making the statement. It is always to be regretted when matters occur to cast suspicions on the fairness of a trial; but it was in the presence of the trial judge, who could know, better than we can, the probabilities of prejudice because of it. We are not warranted in saying that prejudice resulted. In fact, we incline to the view that it could not.

IV. To show the damages sustained, the plaintiff was used as a witness, and for the purposes of the examination, the stock was itemized, as goods, chemicals, syrups, etc., patent medicines, lamps, lamp goods, paints and oils, etc. The witness, under objections, stated the value of the different items. The following is a provision of the policy: "This company shall not be liable beyond the actual cash value of the property at the time any damage or loss occurs, and the loss or damage shall be ascertained and estimated according to such actual cash value, with proper deductions for depreciations, and shall in no event exceed what it would cost the insured to repair or replace same with material of like kind and quality,"

It is urged that the questions asked did not establish the measure of damage agreed upon. We think they tended to. The witness was asked to state the value, which was presumed to mean the cash value, of the goods at the time of the loss; and that would include any depreciation. Such cash value would also fix, presumably, the cost of replacing, in a case where resort must be had to the markets for that purpose. A different rule as to replacing might obtain as to some classes of property.

V. The following is the second instruction given to the jury: "Plaintiff has alleged that the liquors named in the policy of insurance were not owned or possessed by him for the purpose of sale in violation of law. This question is an issue, and you are told that, before plaintiff can recover the value of such intoxicating liquors, it must appear, in addition to all other necessary conditions, and that by a preponderance of the evidence, that plaintiff did not own or possess such liquors, with intent to sell the same within this state. If he has not so established such facts, then you should find for the defendant, on this issue. Plaintiff had the right to keep said liquors, if he did not intend to sell them within this state; or, if he kept them with intent to sell the same outside of the state, his ownership and possession would not be unlawful." The complaint as to the instruction is, that it tells the jury that plaintiff had the right to keep the liquors in the state with intent to sell them outside the state, and it is said, that there is no evidence of an intent to sell outside the state. There was evidence that they were kept for sale in Iowa, in violation of law. The court, by the instruction, told the jury, that before there could be a recovery for the liquors, it must appear that they were not kept for sale in Iowa. It then, with a view, evidently to make plain the law, informed the jury,

that the keeping of the liquors in Iowa, with intent to sell elsewhere, would not be unlawful. Conceding there was no evidence of an intent to sell elsewhere, there was no error. The instruction merely guarded the jury against an impression, that keeping with an intent to sell anywhere, would be unlawful. It was not, as appellant urges, submitting to the jury a question not at issue in the case.

There is a further complaint as to the same instruction, in that it holds the reverse of the holding on demurrer, wherein it is claimed the policy is void because of the keeping of liquors for sale in violation of law; and it is said that, if there could be no recovery for the liquors, there could be none on the policy, because, if it was void as to one item, it would be as to all. In view of our holding as to the demurrer, appellant cannot well complain of the instruction; for the error, if any, is in its interest, by excluding from the amount of the recovery, if the facts were found, one item for which, under the ruling on the demurrer, there might be a recovery. It is not to be understood that we hold to the rule suggested, that because there might be one item of property as to which the policy would be void, on account of the acts of the assured after the policy issued, the entire policy would be void. The case in this respect is quite different from *Garver v. Insurance Co.*, 69 Iowa, 202 (28 N. W. Rep. 555), where the wrongful acts of the assured went to the inception of the policy.

VI. A defense pleaded is that the plaintiff was not the sole and unconditional owner of the property. Issues were taken thereon, and the court instructed that there was not sufficient evidence to establish the defense. In this there was no error. It was an affirmative defense, and the evidence did not support it.

so that the finding for defendant could have been sustained.

Another defense pleaded is that, in making the proofs of loss, the plaintiff swore falsely, with intent to defraud the defendant. The court instructed that, if he did so, he could not recover. The complaint is as to the value fixed upon the property. The proofs show the value to be three thousand nine hundred and sixty dollars. The jury found the value at three thousand six hundred dollars. The court said to the jury that, if the plaintiff, in the proofs of loss, placed the amount too high through inadvertence or mistake, with no intent to defraud the defendant, the statement would not necessarily defeat plaintiff's right to recover. It is urged that there is no claim that the statements were made through inadvertence or mistake. The difference between the actual value as found, and that stated in the proofs of loss, would, alone, suggest the thought and justify the instructions given. Without some such qualification of the rule as was given, the correctness of the instruction might be doubted. The very proposition to be considered was as to an intentional mistatement. The jury was very properly told what the effect would be if the statement was intentionally false, and just as properly told its effect if not intentionally so.

There are some other questions argued that we have not noticed, that are based on misapprehensions of the record, or that, we think, cannot be seriously relied on to reverse the case. The record seems to be without prejudical error, and the judgment is AFFIRMED.