R. J. MOORE et al., Appellees, v. SAINT PAUL FIRE & MARINE INSURANCE COMPANY, Appellant.

**EVIDENCE:  Parol As Affecting Writing—"Parol Evidence" Rule—**
1  **Applicability—Strangers—Policy of Insurance.**  In a controversy between the parties to a written instrument and a stranger,—one who is not a representative or a privy of any of said parties,—proper parol evidence is admissible to show that the written instrument does not in fact speak the truth.

PRINCIPLE APPLIED:  Plaintiff caused his property to be insured.  Later, he contracted to sell his property, and a deed was executed and recorded.  The policy of insurance was also assigned.  On the face of the assignment and deed, all this was done *before* the fire, a fact which would avoid the policy as violative of its conditions.  Loss occurred.  The company refused payment of loss because of (a) change of title and (b) assignment of policy, all before the fire and without the company's consent.  Plaintiff and the assignees of the policy jointly brought suit. *Held,* parol evidence was admissible to show: (1) That, while the assignment was dated as *before* the fire, it was, in truth, executed *after* the fire; and (2) that the deed, while formally drawn up *before* the fire, was, in fact, put in escrow to await the actual closing of the deal, months hence, and was wrongfully recorded, and that, therefore, title did not pass.

**INSURANCE:  Forfeiture of Policy—Conditions—Change of Title—**
2  **Evidence.**  Evidence reviewed, and held sufficient to support a finding that a deed to insured property did not become effective until *after* the loss of the property by fire.

**INSURANCE:  Forfeiture of Policy—Change of Title, Etc.—Uncom-**
3  **pleted Contract of Sale—Effect.**  An uncompleted contract of sale of insured property, with no change of possession or use of the property, is not violative of the condition of a policy of insurance against any change of "interest, title, possession, or use" of the insured property.  (And see Sec. 1743, Code Supp., 1913.)

PRINCIPLE APPLIED:  A policy of insurance contained the condition against change of interest, title, etc., as provided by the Iowa Standard Policy (Sec. 1758-b, Code Supp., 1913).  After

issuance of policy, the insured, without the knowledge of the company, contracted to sell the property. Deeds were executed *and placed in escrow,* to be delivered, months hence, when the final exchange of possession and deed was to be made. No change in the possession or use of the property took place. Before the time arrived to take the deeds out of escrow, the property was destroyed by fire. *Held,* the condition against change in "interest or title" had not been violated.

**INSURANCE: Forfeiture of Policy—Assignment of Policy.** The condition of a policy of insurance, avoiding the policy in case of an assignment thereof before loss, is not violated by anything less than an enforceable agreement to assign.

*Appeal from Franklin District Court.*—CHARLES E. ALBROOK, Judge.

THURSDAY, MARCH 9, 1916.

REHEARING DENIED WEDNESDAY, JUNE 28, 1916.

ACTION at law upon a policy of fire insurance, issued by defendant company, to plaintiff R. J. Moore, covering a frame dwelling house, with foundation and cellar walls, situated upon a certain tract of land in Franklin County. Upon issues joined, the cause was tried to the court, without a jury, resulting in a judgment for plaintiffs, and defendant appeals. —*Affirmed.*

*Sullivan & Sullivan,* for appellant.

*C. F. Johnston* and *John M. Hemmingway,* for appellees.

DEEMER, J.—The policy in suit was issued May 1, 1913, and was for the term of five years; and the building insured was totally destroyed by fire, on December 11, 1913. The amount of the insurance was $900, and defendant refused to pay, because of a breach of some of the conditions of the policy. In answer to the petition, it pleaded that, before the fire, Moore, the insured, sold and conveyed the title, and all his interest in the property insured, and the land upon which

it was located, by warranty deed, to H. R. and R. S. Esslinger, without the knowledge or consent of the company, contrary to the following conditions of the policy:

"That unless otherwise provided by agreement of this company, this policy shall be void if any change other than by death of the insured, whether by legal proceedings, judgment, voluntary act of the insured or otherwise, takes place in the interest, title, possession or use of the subject of insurance, if such change in the possession or use makes the risk more hazardous."

Defendant also claimed that, prior to the fire, the insured, Moore, assigned the policy, by written assignment, to his coplaintiffs, H. R. & R. S. Esslinger, without the consent of the company, contrary to the provision of the policy:

"That, unless provided by agreement by this company, this policy shall be void if the same shall be assigned before loss."

Other defenses were interposed to the petition, which need not now be noted. On these issues, the court, after hearing the testimony, found for the plaintiffs, and the appeal is from that ruling. Proofs of loss were made in the names of all the plaintiffs to this action, it being alleged in the petition:

"That subsequent to said fire, plaintiffs H. R. Esslinger and R. S. Esslinger have become interested jointly with the plaintiff R. J. Moore in the claim herein sued against the defendant. (The said R. J. Moore having assigned verbally the claim sued in this case to the said H. R. and R. S. Esslinger as collateral security to secure certain indebtedness owing by R. J. Moore, to H. R. and R. S. Esslinger.)"

The proofs recited that:

"R. J. Moore, H. R. Esslinger and R. S. Esslinger, being duly sworn on oath, state that we are the persons to whom policy No. 504094 was assigned, said policy having been issued to R. J. Moore and said Moore being now and until

March 1, 1914, in possession and control of said property, said policy issued by the St. Paul Fire and Marine Insurance Company of St. Paul, Minnesota; that we are the owners of the said policy and of the property insured thereby, except that R. J. Moore is in possession of the said property and controls same and does not surrender same until March 1, 1914; that the dwelling house was totally destroyed by fire on the 11th day of December, 1913; . . .

"H. R. Esslinger,

"R. S. Esslinger.

"Also on my part I claim to own and control possession of the property till March 1, 1914, when sale deal is fully closed.

"R. J. Moore."

In the notice of the fire, the three plaintiffs jointly stated:

"You are hereby notified that, on the 11th day of December, 1913, the dwelling house, . . . upon which we were insured by your policy No. 504094 for the sum of $900, was totally destroyed by fire. You are further notified that we shall claim indemnity from you under said policy; and we request that you send us blank forms upon which to make out proofs of loss as required by said policy. The affidavit of loss required by statute is sent herewith."

I. The policy bore an assignment from Moore to his coplaintiffs, of date November 15, 1913; but the testimony conclusively shows that this was not, in fact, executed until after the fire, under the following circumstances and conditions, as testified to by an agent of a mortgagee of the property, who held it:

"A. I was the agent, myself, for the parties that held the mortgage on the place. At the time the deal was made, Mr. Moore told me that they had made the deal, with the Sheffield Land Company, or with Mr. Esslinger, for the farm

and I said, 'You better send the policy to me then we will notify the company.' He said the policy was at the Aredale Bank. A few days afterwards, the policy came to me,—that was the same—It was the same day that I started south on a journey for several weeks in Louisiana, and the matter slipped my mind completely, that the policy was with me. Immediately on my return, or shortly after, when the fire occurred, I looked up the policy and found that the company had never been notified, and the assignment hadn't been made. Mr. Moore came over, and I told him that I thought this date on the assignment—that the assignment ought to be made on the date that he made the deal with Esslinger Brothers, because he virtually assigned it on that day, or intended to, so we dated it back, I made it and dated it myself, and they signed it, but that was after the fire. Q. What do you mean by 'he virtually made the assignment?' A. Well, he had transferred the land at the time he made the agreement with the Esslingers, and the insurance policy was to go with the deal, as I understood it. Q. He sent that to you before the fire? A. Yes, sir. Q. With directions to have it consented to, to make the assignment, or to see about the company accepting the assignment? A. Yes, sir. Q. But you say, the assignment of the policy was actually made before the fire? A. That was the intention, but not signed till afterwards.''

The assignment itself was in this language:

''The property hereby insured having been purchased by H. R. & R. S. Esslinger, the St. Paul Fire and Marine Insurance Company consents that the interest of................ in the within policy be assigned to said purchaser, subject, nevertheless, to all the terms and conditions herein mentioned and referred to.

''Dated at Des Moines, Iowa,
this............day of......................191...

.........................

''Manager.''

"For value received I hereby transfer, assign and set over unto H. R. & R. S. Esslinger and their assigns, all right, title and interest in this policy of insurance, and all benefit and advantage to be derived therefrom.

"Witness my hand and seal this 15th day of Nov., 1913.

"R. J. MOORE.

"Sealed and delivered in presence of D. E. KENYON."

On the 8th day of November, 1913, the following deed was filed for record with the recorder of deeds of Franklin County:

"Know All Men By These Presents: That R. J. Moore and Della A. Moore, his wife, of Franklin County, state of Iowa, in consideration of the sum of $12,000 in hand paid, do hereby sell and convey unto H. R. & R. S. Esslinger, of Franklin County, Iowa, the following described premises, situated in Franklin County, state of Iowa, to wit: (Covering the property insured) in said county . . . Subject, however, to a certain mortgage for $4,000 now on said place, with interest thereon at $5\frac{1}{2}\%$ from March 1, 1913, and a second mortgage for $1,500 now on said place, with interest thereon at 7% from March 1, 1913, said mortgages both due March 1, 1918. Said grantees assume and agree to pay said mortgages and interest, and do hereby covenant to warrant and defend the title to the said H. R. & R. S. Esslinger against the lawful claims of all persons whomsoever, except above stated mortgages and interest as stated. Possession reserved in grantee till March 1, 1914.

"Signed the 6th day of November, 1913.

"R. J. MOORE,

"DELLA A. MOORE."

On the face of the record, and without other evidence, it is clear that there could be no recovery under the policy,

for the reason that both the conditions of the policy before quoted, were violated by the insured. Plain-

**1. EVIDENCE: parol as affecting writing: "parol evidence" rule: applicability: strangers.**

tiffs claim, however, that neither assignment nor deed represents the true situation; that, as a matter of fact, there was no assignment of the policy until after the fire; and that, in truth, the deed, though absolute on its face, and duly recorded, was never delivered; and, if delivered, it was but a conditional delivery; and that title did not, in fact, pass to the Esslingers, until after the fire. Defendant company insists that proof to establish these facts, even if true, is not admissible, for the reasons that the transactions were finally evidenced by writings, which cannot be contradicted by parol. This parol evidence rule does not apply to actions either for or against strangers to a contract. In such suits, the true character of the transactions may be shown, although evidenced by writings; but the writings, of course, may and should be considered, as at least prima-facie evidence of the real agreements, and should not lightly be put aside. 1 Elliott on Evidence, Secs. 572—577, and cases cited. *Livingston v. Stevens*, 122 Iowa 62. The trial court evidently found that neither the assignment nor the deed was what it purported to be. We have before us the opinion of the judge, in which he made the following findings:

"Moore, about the 6th of November, entered into an agreement of exchange of properties with the Esslingers— the Esslinger property being situated in Polk County, Iowa. After they had arranged and agreed upon the terms of the exchange, they went to one Johnson, an attorney living at Sheffield, for the purpose, as they told him, of having him draft a contract, providing for execution of conveyance, and to furnish abstracts of the respective properties, and deliver possession of the respective properties in the exchange on the first day of March, 1914. Johnson suggested that the trouble and expense of preparing so long a contract could be avoided by making deeds, and leaving them with him in escrow to be

delivered March 1st, and the abstracts could then be brought down to that date, at which time the undertaking of the parties could be carried out and completed. Meanwhile, the respective parties could continue in possession of their respective properties which each was to turn over to the other, and that the effect would be the same as though the contract had been made at that time, and the deeds in fact executed on March 1st. The deeds were then executed and left in escrow with Mr. Johnson, leaving it to Johnson to fix the matter up in the manner and form it should be fixed up. Johnson assumed the right to put the deeds on record, and bring the abstracts down to date at that time, and assumed that he could in fact hold the deeds in escrow, and did in fact continue to hold the deeds until the first of the next March. But between the date of the preparation of the deeds and leaving them with Mr. Johnson, and the first of the following March, at which time adjustments were to be made, the fire occurred and destroyed the property on the Moore farm, for which suit is brought to recover.

"It is very apparent that Johnson was not authorized to put the deeds on record, and was not authorized to bring the abstracts down to date, because each party was to pay the taxes on his land due the January following the date of the transaction; and, by bringing the abstracts down to date at the time of the delivery of the deeds to Johnson in escrow, the abstracts would not show the taxes which were then not a lien upon the property, but would be a lien prior to the next succeeding March 1st. Hence, I conclude that, notwithstanding the execution of the deeds and the delivery of the same to Johnson, and his unauthorized delivery of the same for record, that the rights of the parties stood precisely the same as they would have stood, had the written agreement been made that they contemplated having made when they appeared in Mr. Johnson's office, and were diverted from their intention, so far as the form was concerned, by the advice of Mr. Johnson. So, I must conclude that there was

no title passed from Moore to Esslingers by the conveyance relied upon by the defendant.''

These findings are challenged, as is also the legal conclusion of the court that, under the facts, plaintiffs were entitled to recover. As the case was tried to the court without a jury, we must accept its findings as if made by a jury, and, if there be any substantial support therefor, we must, under well-settled rules, sustain them.

There can be no doubt, under the testimony, regarding any of the findings, save as to the delivery of the deeds. Upon that point, there is some confusion. H. R. Esslinger said:

2. INSURANCE: forfeiture of policy: conditions: change of title: evidence.     ''I got a deed to the Moore farm. That deed is in our office at Sheffield. I took it right then. Mr. Johnson saw to having it recorded. The deed was delivered to me after it was recorded and before the fire. Our talk with Mr. Moore about the trade was in November. The deeds were drawn up that day, and we finally concluded to have Johnson simply make out a deed. The deed was made out and it was recorded and delivered to me. I had no talk with Mr. Moore as to any arrangement or plan or agreement after the deed was made out. After we talked the matter over the first time, we didn't have a written contract made. We didn't have any other agreement after the deed was made.''

''Redirect Examination.

''I do not know whether I got the deed until after the fire. I cannot say whether Mr. Johnson kept the papers on both sides or not.''

''Re-cross-examination.

''I do not know when this assignment was made out on the back of the policy. I got this paper—the policy in suit from Mr. Carhart. I do not remember the date that he gave it to me. That was put on for Mr. Moore to sign, but I do not know the date. Q. Was this written on here at the time

you had it made out? A. No, sir. He read it while I was standing there. Q. That writing was on it at the time you took it down and had Mr. Moore sign it? A. Yes, sir. Q. But you can't say when it was made out? A. No, sir, not the date. Q. What month would you say it was? A. What month was the fire? Q. The fire was the 11th of December. A. I suppose he was in along about the 20th of December. Q. Then you say that Mr. Moore actually signed this after the fire? A. Yes, sir. Q. This is dated November 15th, but Mr. Moore actually signed it after the fire? A. Yes, sir.''

Johnson testified, regarding the delivery, as follows:

''I could not state when the deeds were delivered, whether it was before the first of March. My recollection is they were not, but everything was left at the bank together and we held the whole matter in escrow. I had both deeds recorded. The deed for 120 acres was recorded in Des Moines and I looked after the matter of the abstract and everything, and the deed for the 80 acres was recorded here in Franklin County in Hampton. All the papers were kept there at the bank and not delivered to either party. . . .''

''Cross-examination.

''Q. Mr. Johnson, was there anything said about when the deeds were to be recorded, anything said about recording the deeds? A. No, sir, the whole thing—the whole thing was left with me. Q. The whole thing was left to your discretion? A. No, sir, to be closed up the first day of March. Q. Well, were the deeds to be held by you until the first of March? A. The deeds—the whole transaction was to be held by me. Q. I am talking about the deeds now, the deeds were to be left with you until the first day of March, were they? A. Not necessarily, no, sir. Q. Who was to decide what was to be done with them? A. The whole thing was left with me, I was to look after the whole matter. Q. Were these deeds ever recorded? A. Yes, sir. Q. When? A. The deeds were recorded shortly afterwards, both of them. If the deeds were

made out on the 6th day of November, I looked after the recording of both instruments shortly after they were made out. Neither of the parties directed me to record the deeds, but they left the entire transaction with me. Q. What, if anything, was said by either Esslingers or Mr. Moore or Mrs. Moore, or any of them, as to when the deeds were to be recorded and delivered to the respective parties? A. Well, the whole thing was done, to be ready the first of March. Q. Then you had authority from them to record the deeds in the meantime? A. I had authority from both parties, the authority that I should look up the title, fix up the abstracts for both places, and have them ready by the first of March. Q. But the arrangements were all made on the 6th day of November, or the 15th, as you claim it to be, when the deeds were left with you, and there was nothing for either party to do after that, except that one should move out of one property, and the other should move out of the other? A. Both of them were to remain in possession, yes, sir; there was nothing further to do. Q. The trade was finally completed at that time? A. The understanding was made and they carried it out afterwards. Q. In every particular? A. Yes, sir, from that. Q. Now, Mr. Johnson, you say the deeds were left with you? A. Yes, sir. Q. And you had authority to record them? A. Yes, sir, I did record them; yes, sir.''

In view of this rather uncertain testimony, there being nothing from Moore regarding the matter, we are of opinion that the findings of the trial court regarding the delivery must be sustained; for such an inference is not necessarily so strained as to justify us in saying that it has no support in the testimony. If the deeds were deposited with Johnson, to be held in escrow until March 1, 1914, and then delivered, and the sale concluded, and he, without authority, had them recorded, then there was no delivery to the grantees named therein, and title did not pass.

As to actual delivery to Esslinger, there is room for the conclusion arrived at by the trial court, especially in view of

the fact that, even if actually delivered by Johnson, this was
without authority from Moore. Upon the
facts found by the trial court, there can be
no doubt of the law applicable thereto.
There was no change in the possession or use
of the property; and the change in interest
or title which will avoid the policy, must be a present and
absolute one. *Swank v. Farmers' Ins. Co.*, 126 Iowa 547;
*Pringle v. Des Moines Ins. Co.*, 107 Iowa 742; *Erb v. German-American Ins. Co.*, 98 Iowa 606; *Kempton v. State Ins. Co.*,
62 Iowa 83. In *Bartling v. German Mut. L. & T. Ins. Co.*,
154 Iowa 335, there was a complete change, not only of title,
but of possession; and *Cone v. Century Fire Ins. Co.*, 139
Iowa 205, also relied upon by appellant, contains nothing at
variance with the rule here adopted.

*3. INSURANCE: forfeiture of policy: change of title, etc.: uncompleted contract of sale: effect.*

Nothing is said, in argument, with reference to the effect
to be given Sec. 1743, Code Supp., 1913, and we give that no
consideration. It is not inappropriate, however, to quote the
following from the early case of *Ayres v. Hartford Fire Ins.
Co.*, 17 Iowa 176:

"The object of the insurance company, by this clause,
is that the interest shall not change so that the assured shall
have a greater temptation or motive to burn the property, or
less interest and watchfulness in guarding and preserving it
from destruction by fire. Any change in, or transfer of, the
interest of the assured in the property of a nature calculated
to have this effect, is in violation of the policy. But if the
real ownership remains the same—if there is no change in
the fact of title, but only in the evidence of it, and if this
latter change is merely nominal, and not of a nature calculated to increase the motive to burn, or diminish the motive
to guard the property from loss by fire, the policy is not
violated."

Under the findings of the trial court, there was no error
in holding that the transaction between the parties, as to the
transfer of title, did not invalidate the policy.

II. The assignment of the policy was not made until after the fire, and, as the only assignment relied upon by defendant is the written one appearing upon the policy itself, and not a verbal one before the fire, it is manifest that this did not defeat the policy. Had the oral one been relied upon, the result would have been the same, for the reason that there is no testimony as to any present agreement for a transfer, between Moore and the Esslingers, before the fire. Moore, at all times, had an insurable interest in the property; and he did not, so far as shown, enter into any binding agreement to transfer the policy by assignment before the fire. By the terms of this arrangement, the hazard of fire was upon his shoulders until March 1, 1914, and such hazard, he could insure against. The Esslingers then concluded that, instead of having a new house, they would accept an assignment of the policy, and this was made to them after the fire. While we might differ with the court below upon the facts, there is no such showing of prejudice or passion in his findings as to justify us in setting the same aside. It is not our province to try the case anew, but simply to consider it upon errors assigned; and the findings of fact have the same force and effect as if made by a jury.

4. INSURANCE: forfeiture of policy: assignment of policy.

No error appears, and the judgment must be, and it is,—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.