R. W. Kiser, Appellee, v. Morton Farmers Mutual Insurance
Association, Appellant.

No. 40804.

June 20, 1931.

Rehearing Denied October 20, 1931.

H. T. Pressly and Ferguson & Ferguson, for appellee.

Tinley, Mitchell, Ross & Mitchell, for appellant.

ALBERT, J.—In 1923, the plaintiff herein, R. W. Kiser, was the owner of 83 acres of land situated in Page county, Iowa. On the 6th day of December of that year, the defendant issued to Kiser a policy of insurance in the amount of $3,000.00, covering the buildings situated on said land. On September 10, 1929, Kiser and wife entered into a contract of sale for the above property with one Forrest Lee. This contract provided for a down payment of $2,000.00, which was acknowledged, and the balance of the consideration, $10,000.00, was to be secured by a mortgage on this land, covered by two notes, one for $3,000.00 due March 1, 1931, and one for $7,000.00 due March 1, 1936.

One of the provisions of this contract was "that on .............. 19........ upon performance by the second party of the terms of this contract to and including that time, first party shall deliver to second party full and peaceable possession of said real estate together with all appurtenances thereunto belonging, all in as good condition as at the present time, excepting only for natural use and depreciation."

The contract further provided that upon the performance by the second party of the contract, the first party would deliver to the second party a good and sufficient general warranty deed for said real estate. Later in the contract it is provided:

"Possession to be given to second party March 1, 1930."

On the same date, to wit, September 10, 1929, plaintiff and wife executed a warranty deed to Lee for the above described premises. This deed contained no reservations or conditions whatever. At the same time, Lee executed to the plaintiff the notes and mortgage provided for in said contract. The deed from Kiser to Lee was handed over to Lee and Lee handed over to the plaintiff the mortgage and notes according to the contract. They took their respective documents to the recorder's office in Page county and filed the same of record.

The policy of insurance, among other things, made the articles of incorporation and by-laws of the defendant association a part thereof. Among other provisions therein is the following:

"Any person selling or transferring any real estate, his

insurance policy on buildings on the real estate is automatically canceled if either party does not give secretary of this association notice within five days after the transfer of property.''

The fire which destroyed the buildings on the property in controversy occurred January 28, 1930.

No notice of the transfer of this property was given to the defendant association as provided above. It is the claim of the defendant that the policy was automatically cancelled because of the ''selling and transferring'' of the real estate upon which the house was situated on September 10, 1929. At this point in the proceedings, without more, it is evident that this contention of the association is true, and the policy would be automatically cancelled; hence there could be no recovery in the case. But to avoid this situation, the plaintiff pleaded that no completed transfer and conveyance of said premises has yet occurred, and plaintiff herein still has an insurable interest in said premises.

The claim of the plaintiff in this respect is that at the time of the making of the deed and mortgage aforesaid, it was mutually agreed and understood between Kiser and Lee that while these instruments were to be exchanged between them, they were not to become effective and operative until March 1, 1930; that, therefore, there was no such change of title or ''selling or transferring'' as contemplated by the policy. The fact that plaintiff, after March 1, 1930, instituted an action to foreclose this mortgage, and at the same time or later, Lee served notice of rescission of the contract on Kiser, are matters that have little weight, and if at all, affect the question before the court only remotely.

The real question is: What was the status of this property and the parties on January 28, 1930, when the fire occurred?

We turn to the testimony of these parties as to the alleged agreement that the mortgage and deed were not to be operative until March 1, 1930. In relation thereto, Pressly, a lawyer at Clarinda who drew these papers, testified that at the time of the drawing of the contract of sale, Kiser said that inasmuch as he lived in Colorado and his wife was in poor health, he wanted the papers made out so that it would not be necessary for him or his wife to come back, and that the deal was not to be fully completed until the 1st of March, at which time he would give possession of the farm. He was then asked what was said in

that conversation as to when the transfer of title would take effect and he answered "the 1st of March, 1930."

In relation to this matter, Kiser, the plaintiff, testified: "On the 10th day of September, 1929, Mr. Lee paid me $2,000.00 on the contract." Speaking of his deed to Lee, he said: "I gave it to him on the contract. He got it and carried it off." As to the alleged agreement at the time when the papers came into operation, plaintiff testified:

"We talked the matter over. I said we would make out a contract and also make out a deed as my wife and I were both in poor health and for that reason it was impossible for us to come back and we wanted to file the deed while we were here which I think was about the extent of it. I said to him (Lee) we would make out the deed and the contract and the contract and the deed, and all that needed to go into execution until the 1st of March as that was the time of delivery. The papers were to be made out and all of the delivery was to be executed or completed the first day of March as that was the customary way. Think that was about all as I remember. Mr. Lee said that would be all right with him and he would be willing to make it that way. It was suggested by Mr. Lee and myself that the execution of this title was not to go into effect until the 1st day of March. This conversation occurred before the papers were made out. Mr. Lee said it was all satisfactory to him. We left the office together. The conversation was that we would go and register the mortgage and that we would have this much of the work done so that I would not have to come back to this country, and I was in poor health and I wanted to straighten out as much as I could of it at the present time. He said it was all right with him; that he would attend to that right now. The notes accompanying the mortgage were dated March 1st. They were to go into execution with the rest of the papers. That is the reason we dated them ahead. It is true that all of these papers were executed at one time, the 10th day of September, 1929. I took the mortgage and notes and Lee took the warranty deed and went off with them."

With reference to this matter, the vendee, Lee, testified:

"Mr. Kiser said since he and his wife were in poor health,

we might just as well complete the deal as nearly as possible, but it was understood nothing was to be transferred until the 1st of March. That was our language and I said it was satisfactory with me. I never took possession of the land up to this time and never took any rents or profits off the land up to this time. I delivered to Mr. Kiser a mortgage securing the notes aggregating $10,000.00 which was the first lien on the land, together with a $7,000.00 and a $2,000.00 note accompanying said mortgage. I knew the deed was dated September 10, 1929, and on that date paid Kiser $2,000.00 in cash. Kiser said to me that these notes were to take effect March 1, 1930, and not to draw interest until that time. At the time I got the deed, Kiser said he would make the deed and several—just completed that much of the deal while he was here.''

When this witness was asked about anything that was said about the conditions of the transfer he answered:

''Well now, that is pretty hard for me to just remember. He just said he would deliver the deed today because it was convenient; that it was not to take effect until March 1st. I was buying the land from Kiser and I didn't want to pay any interest on the notes until I took possession. That is the reason these notes were made payable March 1, 1930.''

 It may be said at this point that this testimony was objected to on the ground that it violated the parol evidence rule. We have repeatedly held that the parol evidence rule applies only to disputes between parties to the transaction, and is not available to a third party. Moore v. St. Paul F. & M. Ins. Co., 176 Iowa 549; Dilenbeck v. Herrold, 183 Iowa 264; Wheeler v. Schilder, 183 Iowa 623; Blumer v. Schmidt, 164 Iowa 682; Weis v. Bach, 146 Iowa 320; In re Estate Lamb v. Morrow, 140 Iowa 89; Livingston v. Stevens, 122 Iowa 62; DeGoey v. Van Wyk, 97 Iowa 491.

 It is a settled law that to transfer title by warranty deed, two things are necessary: First, the physical delivery of the instrument, and second, an existing intention at the time that title is to be transferred. In other words, two things are necessary to a legal delivery of an instrument. We had a some-

what similar situation before us in Jones v. Betz, 203 Iowa 767, and we there said:

"It is also well settled that, where a deed is signed, acknowledged, and recorded, it is presumed to have been properly delivered; but, of course, this presumption is a rebuttable one."

In that case we cited the Iowa authorities on this proposition.

In the case at bar, it is conceded that the physical delivery of the deed was made. The question left, therefore, is whether there was an intention at the time of the physical delivery to pass title. This must be determined under the facts of the case. We start with the rebuttable presumption that there was a perfect and complete delivery because this deed was "signed, acknowledged and recorded" within the rule above stated, and in addition thereto, there was a physical delivery of the instrument. This raises a very strong presumption that there was an intention to pass a complete title, and the burden is on the insured to overcome this presumption. This makes a disputable fact which we conclude is for the jury to determine in the light of the facts and circumstances surrounding the parties at the time of the transaction.

There may be a question as to the credibility of the witnesses involved herein by reason of their interest in the determination of this particular question of intent to deliver, which, together with the other facts and circumstances in the case, would make a jury question. The court, however, directed a verdict for the plaintiff, and in so doing erred. The case should have gone to the jury under proper instructions.

We still have the question of whether or not, in the making of the executory contract for the sale of this land, Kiser violated the inhibition of the aforesaid by-law. See Kempton v. State Ins. Co., 62 Iowa 83; Davidson v. The Hawkeye Ins. Co., 71 Iowa 532; Erb v. German-American Ins. Co., 98 Iowa 606; Pringle v. Des Moines Ins. Co., 107 Iowa 742; Moore v. St. Paul F. & M. Ins. Co., 176 Iowa 549; Bartemeier v. Central National Fire Ins. Co., 180 Iowa 354.

For the errors pointed out the case is—Reversed.

FAVILLE, C. J., and STEVENS, DE GRAFF and WAGNER, JJ., concur.