## DRAIN *et al v.* MICKEL.

Where an assignee, under an assignment for the benefit of creditors, files
a bond as required by law, and also an inventory and appraisement of
the assigned property, sworn to by two disinterested persons, the county
judge possesses no power or authority, under the act entitled "an act to
amend chapter 62, title 13, of the Code of Iowa, and to close up assign-
ments for the benefit of creditors," approved January 29, 1857, to re-
move the assignee, and appoint a new one.

The power conferred upon the county judge, by section twelve of the act
in relation to assignments for the benefit of creditors, approved January
29, 1857, is to be exercised when there is likely to occur a *failure* of the
trust, and not when there is merely an imperfect or defective perform-
ance of the duty prescribed.

An imperfect or defective inventory of property, conveyed under an assign-
ment for the benefit of creditors, cannot be treated as an absolute nul-
lity.

*Appeal from the Poweshiek District Court.*

THURSDAY, JUNE 9.

THIS cause was submitted upon an agreed statement of
facts, from which it appears, that on the 14th of November,
1857, T. J. Kemper executed to the defendant an assignment
of his property, for the benefit of his creditors generally; and
that the plaintiffs, having been appointed in the place of the
assignee, Reuben Mickel, sued out a writ of replevin, by
which they took possession of the property.

By the agreement, the following further facts appear:
That the assignment was duly acknowledged and recorded;
that Mickel accepted the trust, and took possession of the
property, and held the same until the service of the writ
sued out in this cause; that on the 28th of November, 1857,
he published the notice required by section two of the act
regulating assignments for the benefit of creditors, and on
the 1st of December, filed with the clerk an inventory and
valuation of the property assigned to him, and his bond in
the proper amount, with sureties, approved by the clerk;
that Mickel did not sign the inventory, nor swear to the

valuation, but this was made and sworn to by two disinterested persons, selected by himself, who were sworn to make a true and correct inventory and appraisement; that the said inventory included all the property and effects of said Kemper, which came into the hands of the assignee, but did not include the valuation of the real estate, which was returned as encumbered to its full value, or as of value unknown, and the exact amount and kind of each, and every item or article, was not set out, but was specified by general names and terms, without giving the number of yards, pairs, &c.; that in April, 1858, one Cutts, a creditor, applied to the county judge, for the appointment of suitable persons to execute the trust, for the reason that said Mickel had failed to file the inventory as required by law; that this application was *ex parte*, and without notice to the assignee; and that thereupon the county judge appointed the plaintiffs as such trustees, who thereupon brought this action to recover possession of the property.

It is further agreed, that if the court should be of the opinion that the county judge had authority and right, under the above facts, to appoint the plaintiffs, then judgment is to be rendered in their favor; but if the court should be of opinion that the county judge had not such right, then judgment for the return of the property is to be rendered in favor of the defendant. The opinion of the district court was in favor of the plaintiffs, and the defendant appeals.

*W. Penn. Clarke*, for the appellant.

From the statement in this case, the court will see that but a single question is presented for adjudication, viz: as to the right of the county judge, under the facts stated, to remove Mickel, the appellant, and appoint the appellees to execute the assignment of Kemper, in his stead. This question depends upon the minor one—whether there had been a sufficient compliance with the statute, on the part of Mickel? The district court held, that the inventory and

appraisement specified in section three of the act of 1857, must be made by the assignee himself; that the filing of the inventory and valuation was a precedent act to the filing of the bond; that the filing of the inventory and valuation, and giving bond, were plainly required as one entire act, necessary to completely qualify the assignee to perform the trust; and that the appointment of the appellees was legal and proper.

I. We think the decision of the court below, is too literal, and erroneous. No objection is taken to the sufficiency of the assignment itself. Under the assignment, the legal title to the property assigned, vested in Mickel, as well that not mentioned, as that described in the assignment. Laws of 1857, sec. 1, 430. The second section of the act then requires the assignee to give notice to the creditors. This was done. The *third* section provides, that the assignee " shall forthwith file with the clerk of the district court," a true and full inventory and valuation of said estate, under oath or affirmation, so far as the same has come to his knowledge, and shall then enter into bonds to said clerk, for the use of the creditors, in double the amount of the inventory and valuation, with one or more sureties, to be approved by said clerk," &c. The question is on the true construction of this language of the law. We contend that it was strictly complied with—that such an inventory and valuation as the statute requires, was filed. It is true that the inventory and valuation were made by two disinterested persons—that it was made under their oath—that it was filed by the assignee, with the clerk of the district court— and that it contained all the effects of the estate, that had come to the knowledge of the assignee. But, says the court, the assignee " shall himself file, under *his* oath, or affirmation, an inventory and valuation," but the statute does *not* say so. It says that he shall file a full and true inventory and valuation of the estate, under oath or affirmation, but it nowhere specifies *by whom* the oath or affirmation shall be made. The court *assumes* that it must be the oath of

the assignee, while we can well see, that it was the intention of the legislature to leave it open, so that the valuation might be made by disinterested witnesses, as was done in this case.   The object of this provision of the law, was to manufacture evidence, as to the assets of the assigned estate, by which all parties should be bound.   The assignee stands between the assignor and his creditors.   All are equally interested in knowing the value of the assigned estate, and preserving some evidence of that value.   It is as necessary to the protection of the assignee, as to that of the assignor, or his creditors.   And where, as in this case, the inventory and appraisement is made under the oath of disinterested persons, and their valuation of the property is filed with the clerk by the assignee, he accepts that valuation—makes it his own—and the statute, both in letter and spirit, is complied with.

II.   But assuming, for the sake of the argument, that the statute contemplates that the inventory and valuation shall be made under the oath of the assignee himself, we contend that this provision is but directory—that the assignee does not derive his right from the filing of the inventory, but from the assignment itself—and that a failure on the part of the assignee, to swear to the inventory and valuation made by him, he having entered upon the trust, will not divest that right.   It is difficult to lay down any general rule upon this subject, but we believe that the law resolves itself into this : that where the act prescribed by a statute, does not confer the right or power to act, but merely regulates the manner of carrying out the right or power, the provision of the statute is not inhibitory, but directory, and a failure to comply with the requisitions of the statute, will not vitiate the acts of the officer or agent. Thus, in the case of a sheriff.   He holds an execution against A., and has levied on his land.   The statute provides the length and kind of notice he shall give, before making sale of the land.   The right and power to sell is derived, not from the publication of the notice, but from the judgment and execution.   The

sheriff, in fact, represents both parties—debtor and creditor. It has been held frequently, and was so held by this court, in *Cavender* v. *Heirs of Smith*, 1 Iowa, 306, that so much of the statute as regulated the manner of levying and selling, was directory to, and not inhibitory upon, the sheriff, and that the failure of the officer, in any of these particulars, would not vitiate a sale.

So, in the case at bar. The assignment vests in the assignee the right to act. The law gives the assignor the right to select the person who shall wind up his affairs. The deed vests the property in the assignee, in trust for the creditors. The assignee represents both debtor and creditor. The assignor has as much interest and right, that the assignee selected by him, shall act, as the creditors. For the common benefit of all three of the parties concerned—assignee, assignor, and creditors—the law prescribes that an inventory shall be filed, but neither the filing of that, nor the bond, confers any right—that must come from another source. But let us look at it in another light. Suppose that Mickel had gone on, and converted the assets into money, and that he had never filed any inventory, nor given any bond, could he, with the assets of Kemper in his pocket, coolly say to the creditors of K., " Gentlemen, I am not the assignee of Kemper; I never filed a sworn inventory, nor any bond, as the statute requires; and therefore never had any legal right to the assets of Kemper." We suppose not; and if he could not, then the requirements of the statute, as to filing an inventory, under oath, is directory, and the want of such a valuation will not divest him of his rights.

III. But if this court should be against us on both points, and hold that the provisions of the third section of the act, are inhibitory, and that the inventory and valuation filed, was insufficient, we contend, in the third place, that still the county judge had no power, under section twelve of the act, to remove Mickel, and appoint the appellees assignees of Kemper, in his stead. The statute makes no

provision for such a case as this.   The twelfth section only contemplates cases where the assignee has deceased, or failed  to file any inventory, &c., within twenty days, inferring from the lapse of time, that the assignee named in the conveyance, had refused, or was unwilling to act. But the case at bar shows a trustee in being, and acting.   The defect, if defect there is, was not in refusing, failing, or neglecting to file, within twenty days, the inventory and valuation, but in filing a defective one.   That the statute contemplates an entire vacancy in the assigneeship, by death, or a neglect to take the initiatory steps, is obvious, we think, from the provisions of the section itself.   It makes no provision for notice to any parties interested, but treats the assignment as dormant, for want of an agent to put it into motion.   We cannot believe that such would have been the case, had the legislature contemplated a case like the present, or that the law-making power designed to *oust* a man from office or position, or to divest him of property, without at least giving him an opportunity to be heard.   Old fashioned notions of justice, rebel against such a construction of the statute.

The defect in the proceeding of the assignee in this case, if any defect there is, is amply provided for in the statute. By section seven, the assignee is at all times subject to the order and supervision of the district court, and may be compelled to proceed in the faithful execution of the trust, as required by law.   Under this section, if any of the creditors of Kemper, were dissatisfied with the inventory and valuation, on file,—if they believed it unfairly made, or that any wrong was intended—they had only to apply to the district court, and that court, on a proper showing, could have compelled the assignee to file an inventory and valuation, sworn to by himself.   This remedied, no room was left for complaint.   The proceeding was strictly regular. Not only this, but under section nine, the assignee could have been required to file an additional inventory.   If, then, the filing an inventory and valuation, sworn to by

،two disinterested persons, was irregular, and that irregularity could have been remedied under any other provision of the statute, as we clearly think it could, there is no doubt in our mind that the county judge exceeded the power conferred upon him by section twelve—or, rather, that he acted in a case not embraced within the power—and the decision of the district court is erroneous.

No appearance for the appellees.

WOODWARD, J.—The act of January 29th, 1857, (chapter 254, Statutes of 1857, 430), enacted to secure the faithful execution of assignments, for the benefit of creditors, provides that the assignee shall give notice of his appointment in a manner provided, and send a notice thereof to the creditors, and shall forthwith file, with the clerk of the district court, in the county where the assignment is recorded, a true and full inventory and valuation of the property assigned, under oath, or affirmation, so far as the same has come to his knowledge, and shall enter into bond with the clerk, for the use of the creditors, in double the amount of the inventory and valuation, with sureties approved by the clerk.

By section twelve, it is provided, that if the assignee die, before the closing of his trust, or in case the assignee fail or neglect, for the period of twenty days, after the making of any assignment, to file an inventory and give bond, as before provided, on the application of any person interested, as creditor or otherwise, the county judge shall appoint some one or more persons, to execute the trust embraced in the assignment.    This is the portion of the act upon which the present questions arise.

It is desirable that an explanation should be given of the objection made to the inventory, that specific items were not given, such as the number, pairs, &c., and also in relation to the real estate ; and as a copy of the inventory is made a part of the case, this can be shown.    The following are examples :

Lot of prints,.........................$208 27
"    "   silks, gloves, ribbons............36 98
"    "   pants, coats and vests,··········500 15
"    "   hats and caps,............··· ·····63 00

Three lots in Plattsmouth, Nebraska territory, are mentioned as of numbers unknown, and of a value unknown. Lots in towns, and lands in the state of Iowa, are not valued, but are described in more or less accurate degree, and are stated to be encumbered to their full value.

The object of the act, as expressed in its title, is to amend chapter sixty-two of the Code, and to close up assignments for the benefit of creditors. And as expressed on its face, and in its provisions, we may add, that it is to secure the faithful and more prompt execution of such trusts. By section seven, the assignee is rendered subject at all times, to the order and supervision of the district court, and the latter may cause him to file reports, at any time, of the situation of the trust, and he is to file additional inventories, from time to time, of any further property which may come into his hands.

Assignments for the benefit of creditors, are voluntary on the part of the debtor. No authority can compel him ; and when made, they partake of the nature of a private contract. The assignee derives his authority entirely from the grantor, and the appointment carries with it an actual, and not an imaginary, nor theoretical, trust and confidence. The assignee is the choice of the debtor, in whom to entrust his property, and his relations with his creditors. Under this view of the relation, we should not expect the legislature to go further than to regulate, direct, and secure a performance of the trust. Heretofore it has fallen within the province of a court of chancery, to supply the place of a trustee, when the trust was likely to fail for the want of one. But this act has transferred this authority to the courts of law, in the instance of assignments for the benefit of creditors.

It seems to us, that it is intended that this power should be brought into exercise, when there is likely to occur a

failure of the trust, and not when there is merely an imperfect or defective performance of the duty prescribed. Accordingly, the statute enacts, that when the assignee dies, before the closing of his trust, or if he fails the given length of time to file the inventory and valuation, the county judge may appoint an assignee. As the first of these provisions regards a disability occurring after entering upon a discharge of the trust; so the second seems to regard a non-acceptance of the trust. It takes the failure to file an inventory, as a refusal to accept. We do not think that a just interpretation of the act, requires so rigid a view, as to regard an imperfect, or defective inventory, as an absolute nullity. There are reasons for considering a valuation made by other and disinterested persons, as superior to one made by the assignee himself, and it affords him no greater opportunity for withholding property, than if made by himself. He adopts the act of the appraisers, and thus makes it his own, and they are sworn to a true performance of the duty.

It is to be remembered, that he may make subsequent reports, at any time, and that he is under the supervision of, and subject to, the orders of the district court, who may require him to report upon the condition of his trust, and may, at any time, rectify any errors—cause defects to be cured, and imperfections to be amended. Let it be further borne in mind, that the statute is not express in requiring his signature, or oath, to the inventory and valuation; and that there are not wanting similar instances of a want of explicit requirement as to who shall make an affidavit, or the like, and in which it is held that the act may be performed by others than the party concerned. It is true that the knowledge of the property assigned, belongs properly to him, but, on the other hand, the appraisement of it, better becomes disinterested persons.

In view of these considerations, although we may believe it the primary intent of the statute, that the assignee should sign and make oath to the inventory, at least, yet believing

that a total failure to accept or fulfil the trust, was contemplated, before the will of the assignor should be suspended, by the appointment of a new trustee, we cannot believe this to be the case of such a failure as to call for the appointment of another assignee. In substance, and intention, he has complied with the law, and if the form, or detail, is not entirely correct, it is within the power of the court to cause it to be perfected, by the return of a new inventory, or an amendment of the present one.

The district court considered the appointment by the county court as coming within the puposes and intent of the statute, inasmuch as the inventory and appraisement was not made by the assignee himself, thus regarding these as a nullity, and as if no inventory had been made. In this, we think, the court erred.

This view of the case, avoids the necessity of considering the objection, that the appointment was made *ex parte*, and without notice to the assignee.

The judgment of the district court is reversed, and a writ of *procedendo* is awarded, with directions to the court to award a return of the property, or, in failure thereof, that the defendant have judgment for the value thereof, according to the terms of the agreed case.