J. A. BARTEMEIER et al., Appellants, v. CENTRAL NATIONAL
FIRE INSURANCE COMPANY, Appellees (and two other cases).

INSURANCE: Forfeiture—Change of Title—Assignment for Bene-
fit of Creditors—Non-Acceptance by Assignee.  No change of ti-
tle or interest in insured property is effected by the execution
and recording by the insured of a general assignment for the
benefit of creditors *without any delivery of said deed to, or ac-
ceptance by, the assignee*.  It follows that a policy providing
for forfeiture in event of such change of title or interest is not
voided by such execution and recording.

PRINCIPLE APPLIED:  A lumber company held policies of
insurance on its plant, which policies provided that, in event of
any "change in the title or interest" in the insured property
without the consent of the insurer, the policies should be void.
On May 15th, the company, at a meeting of the stockholders,
ordered the making of an assignment for the benefit of its
creditors, and the same was prepared, signed, acknowledged
and recorded by the company's attorney.  Two assignees were
named in the deed.  One assignee was a stockholder, and at-
tended the meeting which ordered the assignment and voted to
authorize the assignment.  The other assignee learned of the as-
signment on the evening of its execution.  Both assignees swore
positively that they did not accept the trust until they did so in
writing on May 18th.  On May 17th, the plant of the lumber
company was wholly destroyed by fire.  There was evidence
that, prior to the fire, the assignee, who was a stockholder, said
he would accept the trust if the other assignee would, and that
such other assignee then said that, owing to his inexperience,
he "must think the matter over" before deciding whether he
would accept.  This latter assignee did go through the plant on
May 16th and examined it.  Neither assignee took possession of
any of the property until May 18th, and there was evidence
that in the meantime the plant was operated by the company.
There was counter evidence tending to show acceptance of the
trust by the assignees on May 15th.  *Held*, no change in title or
interest was effected until the deed of assignment was delivered
to and *accepted by* the assignee, and that on such issue a jury
question was presented.

ASSIGNMENT FOR BENEFIT OF CREDITORS:  Deed of Assign-
ment—Effect Prior to Acceptance by Assignee—Insurance.  A

duly executed and recorded assignment for the benefit of creditors, while having legal force and effect prior to delivery to and acceptance by the assignee, has no such legal force and effect *prior to such delivery and acceptance* as to constitute a completed sale and transfer, and thereby avoid a policy of insurance which provides for forfeiture in the event of "change of title or interest" in the insured property.

PRINCIPLE APPLIED:   See No. 1.

ASSIGNMENT FOR BENEFIT OF CREDITORS:   Deed of Assignment—Acceptance by Assignee—Necessity.   Concede, *arguendo*, that, when it clearly appears that a debtor intends to make a general assignment for the benefit of creditors, the court will, in event the assignee refuses to accept, appoint a new assignee and thereby save the trust, yet, until such court action, the debtor's title and right of possession are indisputable.

PRINCIPLE APPLIED:   See No. 1.

ASSIGNMENT FOR BENEFIT OF CREDITORS:   Deed of Assignment—Consent of Creditors—Effect.   The fact that creditors are, under the statute (Section 3071, Code, 1897), conclusively presumed to consent to an assignment for the benefit of creditors, in no wise obviates the necessity of a delivery of the deed of assignment to the assignee and an acceptance thereof by him, before there can be any change in the title of the assignor.

PRINCIPLE APPLIED:   See No. 1.

TRIAL:   Verdict—Directed Verdict—Conflict of Evidence—Assignments.   When the evidence on a disputed question of fact is such as would support either one of opposite contentions, a jury question necessarily results.   In a case wherein the validity of fire insurance policies depended on the question whether an assignment for the benefit of creditors was accepted prior or subsequent to a fire, held, under the evidence, to present a question for the jury.

PRINCIPLE APPLIED:   See No. 1.

DEEDS:   Execution—Scope of Term.   Principle recognized that the term "execution," when applied to a deed of conveyance, properly embraces the due (a) making, (b) signing, (c) acknowledgment, and (d) delivery.   So recognized in actions on policies of insurance, the validity of which insurance depended on whether the execution, delivery and acceptance of convey-

ances were such as to effect a change in title to the insured property, and thereby avoid the policy.

PRINCIPLE APPLIED:    See No. 1.

**ASSIGNMENT FOR BENEFIT OF CREDITORS:  Deed of Assign-
ment—Recording—Effect on Question of Delivery.    The mere
recording of an assignment for the benefit of creditors does
not, in and of itself, conclusively establish a delivery of the
deed to the assignee.**

PRINCIPLE APPLIED:    See No. 1.

*Appeal from Muscatine District Court.*—F. D. LETTS,
Judge.

WEDNESDAY, NOVEMBER 22, 1916.

REHEARING DENIED FRIDAY, JUNE 22, 1917.

THE above-entitled actions were brought at law to re-
cover upon several policies of insurance against loss or dam-
age by fire. The answer in each case sets up the same de-
fense, and, by stipulation of the parties, the record of tes-
timony in the case first entitled was made applicable to
the others. There was a jury trial, and at the close of the
testimony, the court directed a verdict for the defendants,
and the plaintiffs appeal. Like judgments were entered in
each of the remaining cases, and in each, the plaintiffs have
appealed. The several appeals have been submitted to-
gether, and will be disposed of in a single opinion.—*Re-
versed and remanded.*

*Jayne & Hoffman,* for appellants.

*Parker, Parrish & Miller, J. F. Devitt,* and *Pascal
& Pascal,* for appellees.

WEAVER, J.—Plaintiffs allege the issu-

1. INSURANCE:
forfeiture:
change of title:
assignment for
benefit of cred-
itors: non-ac-
ceptance by as-
signee.

ance of the policies sued upon to the South
Muscatine Lumber Company, and the loss
of the insured property by fire on May 17,
1914, within the period covered by said in-
surance. As showing their right to recover

thereon, they allege that, on the day following the fire, they accepted an assignment made to them by the lumber company of all its property for the benefit of its creditors, and that, as trustees so constituted, they became vested with said right of action. They allege the loss to be total, and demand recovery accordingly. The defendants admit the issuance of the policy, the loss of the property by fire, the making of proofs of loss, and that payment of the indemnity has been refused. They further admit that the lumber company made an assignment to the plaintiffs for the benefit of its creditors, but deny that such assignment was accepted by plaintiffs on May 18, 1914, after the burning of the property, and allege that the assignment was made and accepted on May 15, 1914, and before the loss occurred. Defendants further plead that the policies sued upon provide, in substance, that if, at any time during the period covered by said insurance, any change, whether by legal proceedings, judgment, voluntary act of the insured, or otherwise, takes place in the title, possession or use of the subject of the insurance, or if the policy be assigned before loss, unless otherwise provided by agreement of the insurer, the contract shall become void and of no effect. They further plead that, in violation of said terms of the policies, and without the consent or agreement of the insurers, the lumber company, on May 15, 1914, and before the loss by fire, made a general assignment of all its property and effects to the plaintiffs, who then and there accepted the same, thereby making void the insurance and relieving the defendants of all further liability on the policies.

The deed of general assignment bears date of May 15, 1914, and was acknowledged on the same date; and it is alleged in the answer that the lumber company, having made the deed of assignment, filed the same in the recorder's office on May 15, 1914, and that, on or about the same date, said assignees orally accepted the trust. On the trial,

the plaintiff Bartemeier testified that he accepted the trust on May 18, 1914, and that such acceptance was made in writing. This instrument, which bears date of May 18, 1914, was put in evidence. On cross-examination, he says he first learned of the assignment on Friday evening, May 15, 1914. Did not know that such a thing was contemplated until he was told it had taken place, though he knew the company was financially embarrassed. Being then asked if he would be willing to accept, he replied, "I will have to think the matter over." He did not know that the deed had been filed for record. He further says:

"Arthur Hoffman asked if I was willing to accept as one of the assignees. I told him I would think it over, and I did not tell him or anyone that I would accept prior to the time I made the written acceptance on Monday, and I did not take possession of any of the property until after I had signed the acceptance."

Concerning his co-plaintiff, the witness testified that Schenck was the bookkeeper and secretary of the company, and had the keys to the office. He came into Hoffman's office after the witness did. As they were leaving, Hoffman called them back and propounded the inquiry whether they would accept the trust. One of them asked Hoffman what there was to it, and he replied, "There is quite a bit to it;" and, after some further words of conversation, witness said, "I don't know whether I can accept it or not, but I will see." On the next day, he went over the plant, looking into its condition, to aid him, he says, in coming to a conclusion upon the question of his acceptance, because he had no experience of that kind, and wanted to know pretty near what he was expected to do. Mr. Schenck, as a witness, says that he signed the acceptance on Monday, and that they did not take possession or assume control until after the writing was signed. He did not signify his acceptance before that time, except to say that he would ac-

cept if Bartemeier did. There is evidence to show that the business was continued by the company in its usual manner all of Saturday, May 16th, the day prior to the fire. Schenck owned one share of the capital stock of the company, was its secretary and treasurer, and prepared the list or schedule of creditors which was attached to the assignment. He was also present at a meeting of the stockholders held on the afternoon of May 15th, and voted with the rest to authorize or ratify the assignment.

The motion for a directed verdict, filed at the close of the evidence, was on the following grounds:

1. The evidence shows without dispute that the policies had become void before the fire.

2. The policy was avoided on May 15, 1914, by the change made by the assignment of the company's title to the property.

3. The assignment, or change in the title to the property, was made without the insurer's consent.

4. There is no sufficient evidence to sustain a verdict for plaintiffs, if one should be returned.

This motion having been sustained, and a directed verdict for defendants returned, plaintiffs thereafter, and in due time, moved for a new trial, because of the trial court's alleged error in holding as a matter of law that the conditions of the policy had been violated by plaintiff before the fire, and because the question whether the assignment had been accepted before the loss was one of fact for the jury alone to determine. This motion was denied, and judgment entered against the plaintiffs for costs.

The propositions which the several appeals bring up for consideration are as follows:

1. Was a delivery of the deed or an acceptance of the trust by the plaintiffs necessary to effect a change of title to the property, within the meaning of the contract between the parties; and

2. If such acceptance was necessary, then was the date or time of such acceptance so conclusively shown as to justify the trial court in holding as a matter of law that it took place before the fire?

I. The first question, whether an acceptance of the trust was necessary to work a change of title, within the meaning of the policy, is not, as some of counsel seem to think, equivalent to an inquiry whether the assignment was valid for any purpose or to any extent before such acceptance. We have held that an executory contract, or agreement to sell and convey property, though in all respects valid and enforceable, does not of itself work such a change of title, and that the grantor remains vested with an insurable interest until the conveyance or transfer is complete. *Erb v. German-American Ins. Co.*, 98 Iowa 606; *Moore v. St. Paul F. & M. Ins. Co.*, 176 Iowa 549; *Kempton v. State Ins. Co.*, 62 Iowa 83. See also *Zeitler v. Concordia Fire Ins. Co.*, (Mich.) 135 N. W. 332; *Pomeroy v. Aetna Ins. Co.*, (Kan.) 120 Pac. 344; *Garner v. Milwaukee Mech. Ins. Co.*, 73 Kan. 127; *Browning v. Home.Ins. Co.*, 6 Daly (N. Y.) 522; *National Fire Ins. Co. v. Three States Lbr. Co.*, 217 Ill. 115. · In the *Moore* case, supra, the conveyance was made and placed in escrow with a third person, to be held until the date arrived for a change in the possession of the property. The person holding the deed caused it to be recorded at once. Before the date arrived for the delivery of possession, the house on the land burned. The grantor held a policy of insurance on the building, which contained a condition against change in title substantially like the one relied upon by the defendants in this case, but we held that there had been no such change in the title or interest of the insured as would defeat his action on the policy. Quite similar in fact and principle is the *Pomeroy* case, supra, decided by the Kansas

*2. ASSIGNMENT FOR BENEFIT OF CREDITORS: deed of assignment: effect prior to acceptance by assignee: insurance.*

court. The general doctrine that delivery and acceptance of a deed of conveyance are essential to a transfer of title is too elementary to require citation of authorities. In nearly all cases of sale and transfer of title to land, there is some interval of time between the date when the sale is agreed or determined upon and the date when the deed is delivered by the one party and possession is delivered or relinquished by the other. Until this is done, the legal title is in the grantor, who remains clothed with all the essential attributes of ownership.

Generally speaking, a policy of insurance upon the property to be conveyed, providing for forfeiture of indemnity upon change of title or interest in the thing insured, does not become void until the sale and transfer is complete. Acceptance of the deed by the grantee is, as a rule, sufficiently shown by his act in receiving and retaining it, and under some circumstances, it will be presumed from the beneficial character of the conveyance. If, however, the deed is not of a beneficial character to the grantee, but imposes a duty to be performed by him, and there is no other evidence of delivery, the presumption of acceptance does not arise. A transfer of title to real estate to a trustee for the benefit of creditors is effected by deed expressing, in apt words, its character and purpose. It is primarily intended to vest the legal title in the named trustee for the use of the beneficiaries, the grantor's creditors. Until such conveyance is effective to pass the title and possession, there is no apparent reason why it should operate to avoid a policy of insurance upon the property, any more than any other sale or transfer which is not yet complete. To hold it not complete, it is not necessary to say that the contract for the conveyance, in the one case, or the initiatory steps already taken, in the other case, for a general assignment for the benefit of creditors, are void or of no effect, but rather that, if the transaction in either case has not pro-

gressed to a point where there is a complete change of title, then the forfeiture provided for in the policy has not become operative. The fact that a court of equity may, in the first case, entertain an action to enforce performance of the contract, or, in the other case, may assume to administer the trust or appoint a new trustee to administer it, has little or no bearing upon the question which a loss by fire with the title in that condition raises between the grantor and the insurance company issuing the policy indemnifying him against loss of that nature. Between these parties, the question is not whether the property owner has entered into a contract to sell and convey to a third person, or whether such owner had executed a conveyance in trust to another for the benefit of creditors. The thing to be determined between them, in either case, is whether the intended transfer had been fully accomplished. In the case of *Kempton v. State Ins. Co.*, 62 Iowa 83, where the loss occurred after the making of a contract of sale, and before deed was delivered, this court held that the policy of insurance issued to the grantor was not avoided. In so holding, we quoted approvingly the language of the Maryland court, saying that the condition in the policy was one which should be construed with studious care to avoid a forfeiture, and that:

"Nothing less than the absolute sale or conveyance of the property, with all the usual legal ingredients to constitute the transaction as such, * * * can be considered as sufficient to avoid the policy on that account. * * * To constitute a sale within the meaning and terms of the proviso, the right to the property sold and to the possession thereof must pass from the vendor to the vendee."

In *Moore v. St. Paul F. & M. Ins. Co.*, 176 Iowa 549, we approved the same rule, where the forfeiture clause was identical with the one in this case. The transfer in that case, as we have already noted, was complete except the de-

livery of the deed, which was to be withheld for a short period, during which the grantor was to remain in possession of the land. Loss occurred before his right of possession expired, and it was held that he did not forfeit his right to recover upon the policy. There is some confusion in the precedents upon this point, but we have heretofore adhered to the rule above stated, and in so doing, we are quite in harmony with the prevailing view.

The attitude of the appellees, as indicated by the language of the petition and by the course pursued upon the trial, makes it fairly evident that, at the outset, they were disposed to concede appellants' proposition that an acceptance of the trust by the assignees was essential to accomplish a change of title and bring the provision for forfeiture of the insurance into operation. The fact of such acceptance and the date thereof was affirmatively alleged in the answer, as having been made prior to the loss, and evidence was offered in support of such allegation. In this court, counsel for appellee largely rely upon the proposition that an acceptance by the assignees was unnecessary, and that, in the absence thereof, the title of the lumber company was divested by operation of law. But counsel will doubtless concede that a mere intent to make such an assignment would not be effective to change the title to the property. To have the effect, the intent must have been followed or accompanied by appropriate and efficient action. The entire ownership and right of possession must have been conveyed by the assignor and acquired by the assignee before the insurable interest of the former could be eliminated by the forfeiture clause in the policy. The right of an owner to make an assignment for the benefit of his creditors had long been recognized before the enactment of our statute. Such right is an incident of or an element in the right of absolute ownership by which every man holds dominion over his own property. *Brashear v. West,* 32 U. S.

607. To create such a trusteeship, it was universally held that the assignor must, by deed, after the manner of conveyances in general, make an absolute transfer of the title, possession and control of the property to his assignee. There must be a surrender of all right and control, and a complete appropriation by the assignor of his property to a trust fund for the payment of his debts, and until then, there is no complete or effective change of title. An assignment for the benefit of creditors, without an assignor to pass the title and an assignee to receive it, is an irreconcilable contradiction of terms.

It may, for the purposes of this case, be

3. ASSIGNMENT
FOR BENEFIT OF
CREDITORS:
deed of assignment: acceptance by assignee: necessity.

admitted that, when the intent and purpose to make an assignment are clear, and the assignee named fails or refuses to accept or qualify, the court will not permit the trust to fail for want of a trustee, but will appoint one; but it is no less true that, until the court does act in the premises, the assignment remains incomplete, and the assignor's title and right of possession are indisputable. Our statute does no more than to regulate the right of assignment for the benefit of creditors, forbid the making of preferences therein, and direct the manner of administering the trust. It specifically provides that every such assignment shall be in writing, setting forth the name of both the assignor and the assignee, and requires that it shall be acknowledged and recorded in the office of the county recorder of deeds and subsequently filed with the clerk of the court which has supervision of the trust. The effect of such transfer and record is to vest the debtor's property in the assignee. It does not in terms declare what shall be a sufficient delivery or acceptance of such trust. No more do the provisions of our statutes respecting ordinary conveyances and forms of deeds and the execution and acknowledgment thereof undertake to declare

what shall· be a sufficient delivery and acceptance of such instruments. In both statutes, the legislature has taken for granted the existence of the long-established rules and principles of law upon the subject, and left these questions to be governed thereby.

The provision of the statute that the

4. ASSIGNMENT FOR BENEFIT OF CREDITORS: deed of assignment: consent of creditors: effect.

consent of the creditors to such assignment will be presumed, does not require any other conclusion. Under the ancient practice prevailing before· our statute was enacted, it was competent for the assignor to classify his creditors and make preferences between them. It was also quite generally held that an assignment required the consent of the creditors, and only such as did consent were entitled to the benefits of the trust. Our· statute, as we have seen, denies the right of the assignor to make preferences between his creditors, and, by declaring the creditors' consent to be presumed, eliminates the necessity of other proof thereof as a condition precedent to a valid as- signment. But such presumed consent in no wise affects the question here raised as to the point of time when, if it all, the title to the insured property vests in the assignee. As we have already suggested, the time when an assignment has acquired such a status that the court will take cogni- zance thereof and provide for its completion and administra- tion is not necessarily coincident with the time when the change of title from the assignor to the assignee is complete. That there is or may be an interval of time between the mak- ing of the assignment papers and the taking effect thereof as a completed transfer of the title to the assignee, in which interval intervening rights may accrue as between the as- signee and third persons, has often been held. Among the authorities to this effect are *Woolson v. Pipher,* 100 Ind. 306; *Crosby v. Hillyer,* 24 Wend. (N. Y.) *280; *Pierson v. Manning,* 2 Mich. 445, 462; *Lawrence v. Davis,* 3 McLean

(U. S.) 177, 178; *Nicoll v. Spowers*, 105 N. Y. 1; *McIlhargy v. Chambers*, 117 N. Y. 532; *Day v. Sines*, 15 Wash. 525; *Hill v. Rolfe*, 61 N. H. 351. See also *Fuller v. New York Fire Ins. Co.*, (N. Y.) 67 N. E. 879; *Marston v. Coburn*, 17 Mass. 453. In the *Crosby* case, above cited, a deed of general assignment had been made and placed in the hands of the assignee, who said he was not prepared to accept, because not satisfied with the naming of another person as his co-trustee, and he would take a little time to consider it. A few hours later, and after an execution had been levied on the property, he announced his acceptance, and claimed the property as against the execution creditor. The court held that the lien of the execution was good, because, at the time of the levy, there had been no completed delivery and acceptance of the deed of assignment. In the *Marston* case, supra, the deed of assignment was made and signed by the assignor and also by the assignee. The assignor then took the deed and went to find his creditors, to obtain their consent thereto. While he was gone, a creditor levied upon the property. The court held that there had been no sufficient delivery of the assignment, and that the attachment was a prior lien. In the *Pierson* case, the Michigan court says:

"That there must be an acceptance of the trust by the trustee before the assignment can take effect, is unquestionable."

In the *Fuller* case, the owner of insured property was adjudged a bankrupt upon his own petition, and a receiver of his estate was appointed thereafter, but, before a trustee was appointed, a loss by fire occurred. Action on the policies being brought by the trustee, the insurers, as in the case at bar, pleaded a breach of condition against a change of title. The court ruled against the defense, saying that the title to the property had not changed within the meaning of the contract; that, as a result of the loss, the as-

signor acquired a valid right of action, which passed in turn to the trustee in bankruptcy when appointed. In *Wadleigh v. Merkle,* 57 Wis. 517, the court says:

"Under the common law a deed is not executed so as to be of any efficacy until the same is delivered and accepted by the grantee or assignee named therein. This rule is not disputed by   *   *   *   counsel, but it is said that the rule should not be applied to an assignment under the statute. We think there is not only the same reason for applying the rule to such an assignment, but a much stronger reason, because the assignment cannot be executed so as to affect any of the creditors of the assignor without the active assent of the assignor mentioned in the assignment."

In the *McIlhargy* case, from New York, where the statute requires a written acceptance from the assignee, the deed was written and the acceptance signed by the assignee before its execution by the assignor. The paper was left with the scrivener. Later in the same day, the debtor went to the place where the paper had been left, and signed and acknowledged it and left it with his attorney. Some days later, he made a formal delivery of the deed to the assignee. In an action between the assignee and a judgment creditor, it was held that, although the deed was made and was assented to by the assignee in writing as the statute required, it did not become effective until it was delivered to the assignee. The court says:

"Delivery is as essential since the statute of assignments as before its passage,   *   *   *   and, until that event, the assignment could not become operative.   *   *   *   The mere taking of an instrument into his hands by the grantee, even if he retained it, would amount to nothing if the circumstances showed that he did not receive or hold it as an effective conveyance.   *   *   *   We have no doubt that, under the provisions of that act, as before, it is essential to the operation of such an instrument that the

assignor should part with it by actual delivery either to the assignee or to his agent. Delivery is a constituent part of the act of execution. It is its consummation, and the estate of the assignor cannot be affected until the act has been performed."

The question of delivery and acceptance is determined by the intention of the parties to the transaction, and, if there is any dispute as to what was done, or as to the intent with which the acts alleged to constitute delivery or acceptance were done or performed, or if the circumstances attending and characterizing such acts are such that reasonable minds may draw different inferences or conclusions therefrom, then the issue of fact so raised is for the jury.

5. TRIAL: verdict: directed verdict: conflict of evidence: assignments.

Turning more particularly to our own precedents, we find that, from the beginning of the judicial history of the state, in every case where the subject has been mentioned, the law has been interpreted and applied as requiring a delivery of the deed and an acceptance of the trust, to effect a completed assignment or change of title. In *Cowles v. Ricketts,* 1 Iowa 582, it is said that the statute on this subject clearly "implies a trust and contemplates the intervention of a trustee." We might add that this is not merely implied, but is expressed by the statute in the specific requirement that the assignment must be in writing, and must name an assignee or trustee. Code Section 3072. The case of *Burrows v. Lehndorff,* 8 Iowa 96, sometimes mistakenly cited as overruling or modifying the *Cowles* case, is not at all inconsistent therewith. The decision there made goes no further than to hold that, where a debtor, in an evident attempt to avoid the statute, disposes of all his property by a series of mortgages having the effect of a general assignment preferring some creditors over others, the mortgagees will be held to account as trustees or assignees.

In *Meeker v. Sanders*, 6 Iowa 61, 66, it was held that, where a delivery of actual possession of the property has been made to the assignee, failure to properly acknowledge and record the deed was not fatal to the assignment. In *Drain v. Mickel*, 8 Iowa 438, the court, interpreting the general effect of the statute, held that:

"Assignments for the benefit of creditors are voluntary on the part of the debtor * * * and when made they partake of the nature of a private contract. The assignee derives his authority entirely from the grantor, and the appointment carries with it an actual and not an imaginary or theoretical trust and confidence."

Applying this principle, it was held that the trial court erred in assuming to appoint a new assignee because of an alleged irregularity in filing an inventory of the assignor's property, and that there must be "a total failure to *accept* or fulfill the trust * * * before the will of the assignor should be suspended by the appointment of a new trustee."

In *Lampson v. Arnold*, 19 Iowa 479, is a somewhat elaborate discussion of the statute with respect to the pre-existing common law, pointing out that the one material change effected was to render invalid general assignments with preferences between creditors. In speaking of the particular assignment then being considered, the court notes that the assignee was notified in advance of the purpose to make the conveyance to him, and it was accordingly "executed, delivered and accepted." Where an assignment was made by a partner for his firm, the other partner being in another state, and the assignee took possession of the property, an attachment levied thereon after the delivery of the deed, but before it was ratified by the absent partner a few days later, was given priority over the assignment. *Mills v. Miller*, 109 Iowa 688. In a contest between an assignee claiming under deed of general assign-

ment, and a creditor claiming under a mortgage made on the same day, it being shown that the delivery of the assignment was made before the delivery of the mortgage, the former was given priority. *Gage v. Parry,* 69 Iowa 605. A debtor made an assignment for the benefit of his creditors to a named trustee, and the deed was recorded; but, before the instrument was delivered, he changed his mind, and nothing further was done to complete or perfect or administer the trust. It was held that, there being no acceptance or delivery, the assignment never became effective, and had never been "acted upon by any person interested therein." *Darnall v. Bennett,* 98 Iowa 410.

In a contest between an attaching creditor and an assignee for the benefit of creditors, the question arose as to the time when the assigned property could be said to be *in custodia legis.* The court, after pointing out that, in the case then under discussion, the assignor had surrendered her property to the assignee, who was in actual possession thereof before the levy of the attachment, held that no lien was acquired by the levy. After discussing the authorities bearing thereon, the opinion states its conclusion, that:

"Where an assignment is *regularly made and the assignee is in possession of the property for the settlement of the estate,* such property is in the custody of the law." *Hamilton-Brown v. Mercer,* 84 Iowa 537, 541. See also *Price v. Parker,* 11 Iowa 144.

In *Singer v. Armstrong,* 77 Iowa 397, an action involving the question of priority between an assignee and an attaching creditor, the issue was made to turn on the question whether the assignment had been accepted by the assignee when the attachment was levied, and it was held that the promise of the assignee in advance to accept, followed by the making of the deed and its delivery to another acting for the assignee, was sufficient. A similar holding is found in *American Co. v. Frank,* 62 Iowa 202. A similar contest

arose in *Rock Island Plow Co. v. Breese,* 83 Iowa 553. There, the deed of assignment and levy of attachment were made on the same day. The assignee had consented to act, but the court found that, when the attachment was levied, the deed had not yet been signed by one of the partners. and, in holding that this gave the attachment lien priority, the court says:

"It may be true that it was a valid instrument without the signature of both members of the partnership, but the signatures of both were thought to be necessary, and the parties acted in that belief, and there was no delivery of the assignment to the assignee as a completed instrument until sometime after the attachment was served, and the property in the possession of the sheriff."

Other cases to the same general effect can be found, but those cited sufficiently indicate that the necessity of delivery and acceptance, or an actual assumption by the assignee of the possession of the assigned property, has been uniformly recognized in this jurisdiction as essential to a completed assignment. Many of the legal propositions laid down in argument for appellees are not at all inconsistent with this view. For example, it may be admitted, for the purposes of this case, that the "assent of the creditors" to an otherwise effective assignment for their benefit will be "conclusively presumed;" also that "the execution, delivery and recording of the deed transfers the property of the debtor into the custody of the law;" also that "an assignment for the benefit of creditors takes effect upon its execution and delivery;" and that "equity will not permit a trust to fail for want of a trustee." The very statement of these principles supports the proposition we have above announced, that, to an effective or completed assignment, a delivery or acceptance or change of possession is essential. It should be kept in mind that, as we have already pointed out, to entitle plaintiffs to go to the jury in this case, it is

not essential that the assignment at the time of the loss
of the insured property should be found to have been void
or of no effect.   The issue turns rather upon the question
whether the assignment had then been fully consummated,
and the title to the property had then been effectually
transferred to the assignee.   The appellees' own argument
and the authorities cited by their counsel are to the effect
that this question depends upon whether this conveyance
had been "executed and delivered."

"Execution" of a deed of conveyance
6. DEEDS: execu-  is not limited in meaning to the mere mak-
tion: scope of
term.            ing or signing thereof, or to its acknowl-
edgment, although it is sometimes loosely
used in that sense.   Properly, it includes the idea not only
of the due making, signing and acknowledgment, but also of
its delivery to the grantee or to some other person for him.
*Creamer v. Bivert,* 214 Mo. 473; *Brown v. Westerfield,* 47
Neb. 399; *Nicholson v. Combs,* 90 Ind. 515, 516; *Fire Asso-
ciation v. Ruby,* 60 Neb. 216; *Tiernan v. Fenimore,* 17 Ohio
552; *Wells v. Lamb,* 19 Neb. 355; Black's Law Dictionary;
Anderson's Law Dictionary.   We find no precedent in any
decision upon the common law of assignments, nor any de-
cision, where the statutory regulations of such assignments
are at all comparable with our own, which fairly supports
the proposition that an assignment of this nature works
a change of title to the assigned property without delivery
to or acceptance by the assignee, and without a change in
the possession or control.   It follows that the first inquiry
suggested at the outset of this discussion must be answered
in the affirmative.

II.   The next and last inquiry is whether, adopting the
conclusion above announced, it should still be held that the
evidence introduced on the trial shows, as a matter of law,
the delivery and acceptance of a conveyance or completed
assignment vesting the legal title in the assignee before

the loss by fire occurred.   This question we are constrained
to answer in the negative.   It is suggested

7. ASSIGNMENT
FOR BENEFIT OF
CREDITORS:
deed of assign-
ment: record-
ing: effect on
question of de-
livery.

that the recording of the deed effected a de-
livery, but such is not the law.   It may be,
and probably is, evidence tending to show
delivery, but it is assuredly not conclusive
of that fact.   Indeed, some courts seem dis-
posed to hold that the mere record of a deed is of but slight
weight as evidence of delivery, unless the possession of the
recorded paper is traced to the grantee or to the party
claiming under him.   *Egan v. Horrigan,* 96 Me. 46; *Barr
v. Schroeder,* 32 Cal. 609.   At most, it gives rise to a rebut-
table presumption of delivery.   *Neel v. Neel,* 65 Kan. 858;
*Beckett v. Heston,* 49 N. J. Eq. 510; *Jackson v. Perkins,* 2
Wend. (N. Y.) 308, 317; *Hill v. McNichol,* 80 Me. 209, 220.

Again, it is said to be shown without dispute that the
deed was delivered to counsel for the assignees, and that
his act in having it recorded was their act.   But the record
does not so show.   There is nothing in the record to prove
conclusively that Arthur Hoffman, who took the deed and
placed it of record, was at that time in any manner rep-
resenting the assignees, or acting under authority or in-
struction from them.   It sufficiently appears that he or his
firm represented the insolvent corporation and drew or
prepared the deed of assignment and took it to the record-
er's office.   So far as appears, plaintiffs knew nothing
of the recording until after it was done, and, if they tell
the truth (and their credibility was for the jury), neither
of them ever consented to act as a trustee for the adminis-
tration of the insolvent's estate until two days later.

It is argued by counsel that there is a conclusive infer-
ence of consent on the part of the plaintiff Schenck, because
he, as one of the directors of the corporation, attended a
meeting of the board on Friday afternoon, and united in
the action authorizing or ratifying the act of the officers in

making the assignment. The record does not sustain us in so holding. It is entirely possible that he believed that the embarrassments under which the corporation was laboring made an assignment advisable, and yet was not willing to accept the burdens or responsibilities of a trustee for the settlement of its affairs. It is not shown that he had seen or knew the contents of the deed, or knew or had been informed that he had been or was likely to be named as an assignee; and, in view of his explicit denial that he had consented thereto, it was not within the province of the court to take that question from the jury. Moreover, even if he had consented in advance to accept the trust, the title to the property would not vest in him under the trust until the deed for that purpose was made and delivered. The case of *Commercial Nat. Bank v. Mosser*, 57 Mich. 386, cited by the appellees, differs widely from the one before us. There, the assignees, following the practice allowable in some states, united with the assignors in making the written assignment, after which they themselves filed it for record. This, the opinion expressly says, was done by the assignees "after the execution was complete." In other words, the deed was complete in form, and the assignees' consent was shown by their act in joining in the deed, which was delivered before it was made of record. See, in this connection, *McIlhargy v. Chambers*, 117 N. Y. 532, above cited.

As further bearing upon the question, we may say that there was evidence tending to show that, up to the close of business on Saturday evening before the Sunday on which the fire occurred, there was no visible or actual change in the management, control or possession of such business, or of the company's shops or other property, and, if true, the fact so shown tended directly to corroborate the plaintiff's claim that they did not act or consent to act in the premises until Monday morning, thus emphasizing our conclu-

sion that the question whether the change of title had taken place when the fire occurred was one for the jury. It is true, of course, that circumstances were shown or admitted from which the jury could have inferred that the assignees did consent to their appointment in advance, but, there being also other evidence justifying the contrary finding, it was not a case for peremptory direction of a verdict.

The necessary result of this discussion is the reversal of the judgment of the district court in each of the cases mentioned in the caption, and they will each and all be remanded for a new trial.—*Reversed and remanded.*

DEEMER, EVANS and PRESTON, JJ., concur.